## Nathan M. Waterman, Trustee: Appeal from Probate.

F. & G. copartners in the business of making railroad cars, owning $440,000 of real and personal property used by them in their business, and being indebted to the amount of $205,000, for the purpose of making their property available for the payment of their debts proposed to their creditors that they (F. & G.) should form a joint stock corporation to take their business with a capital of $200,000, of which they should subscribe the entire amount, and transfer to the corporation their whole property, of which $200,000 should constitute the capital, and the remainder a pledge for the payment of their debts, and the avails thereof be applied by the corporation for that purpose—that they would sell to each creditor an amount of the stock of the corporation equal to one-half his claim, taking the negotiable notes of such creditor therefor, which stock so transferred should be made preferred stock—and that the remainder of the stock should be transferred to a trustee as a further security for the payment of their debts ; to which proposition the creditors (except a few) acceded, stipulating with each other that the earnings and avails of the property should be appropriated to the payment of their several claims against F. & G. in the order of their future maturity, with a provision that the agreement accepting the proposition should not take effect till signed by all the creditors of F. & G. whose claims exceeded $200. The agreement was not in fact signed by all the creditors who held claims of that amount, but this fact was well known to F. & G. and to the corporation at the time of their action on the subject. F. & G. proceded to form a corporation as proposed, associating with themselves for the purpose a nominal member,

and transferred all their property to the corporation, in accordance with their agreement. The corporation at its first meeting passed the votes necessary to carry out the arrangement agreed on, that with regard to the payment of the debts of F. & G. being as follows: " that the directors are hereby authorized to apply the earnings and avails of the property of the corporation toward the payment of the liabilities of F. & G. in accordance with their contract with their creditors, entered on the records of this corporation." The directors thereupon held a meeting and voted to accept the property of F. & G., the same to be applied in part to the payment of the subscription of F. & G. to the stock of the corporation and the surplus to the extinguishment of the liabilities of F. & G. in accordance with the contract before mentioned. All the property thus conveyed to the corporation was necessary for its business. A certificate was lodged by the directors with the secretary of the state and the clerk of the town, in accordance with the statute, stating among other things the capital of the corporation to be " $200,000, the entire amount of which has been paid in." The corporation commenced business, and paid the debts of F. & G. as they matured for about two months, the amount thus paid being about $50,000, when it ceased paying them, and soon after made an assignment for the benefit of its creditors, having contracted debts of its own to the amount of $19,000. The appellees were creditors of F. & G. who had subscribed the agreement, and had not been paid by the corporation. The commissioners on the assigned estate allowed their claim, and the trustee appealed from their report to the superior court. Held in advising judgment for the appellees,

1. That the corporation had power to assume, on a valid consideration, the debts of F. & G.
2. That there was here a valid consideration in the property received.
3. That the corporation by its votes and the acceptance of the property, did in fact assume the debts in question, so as to become itself the debtor of the creditors of F. & G. who signed the agreement.
4. That the corporation having accepted and retained the property under the agreement, could not now take advantage, against the creditors who signed the agreement, of the fact that it was not signed by all.
5. That the fact that the direct creditors of the corporation might have been deceived by the certificate and have given credit to the corporation in ignorance of its liability to the creditors of F. & G, constituted no reason why the claims of the latter should not be allowed against the corporation, as the question of equities between different classes of creditors was not involved here, and should be made if anywhere before the court of probate.

APPEAL to the superior court, from the report of commissioners on the assigned estate of the Grove Car Works, allowing the claim of Ashmead & Hurlbut. The facts were found by a committee.

On the 5th of September, 1854, Thomas J. Fales and John S. Gray, copartners in business under the name of Fales & Gray, engaged in the manufacture of railroad cars,

in Hartford, were in embarrassed circumstances, and unable to meet their liabilities in regular course, and proposed to their creditors the arrangement stated in the following agreement, which was signed by them and afterwards by a large number of their creditors residing in Hartford, Boston, New York, Albany and elsewhere, and also by the appellees. The agreement was as follows :—

Whereas the firm of Fales & Gray, of Hartford, are unable to meet their liabilities in regular course, and propose to make an arrangement for the purpose of rendering their property as available as possible for the payment of their debts, and to that end have agreed, and do hereby agree, that they will, if desired so to do, form a company or corporation under the public act of this state relating to joint stock corporations, with a capital of $200,000, and will subscribe the entire amount thereof, and will contribute and transfer to said corporation at the prices or values specified in the inventory now being by them taken, such proportion of the entire real and personal estate of said firm as shall amount to the sum of $200,000, without further consideration from said corporation than the stock thereof to be subscribed by the said firm as aforesaid ; and have in like manner agreed, and do hereby agree to transfer the remainder of said real and personal estate to said corporation as a pledge for the payment of the present indebtedness of said Fales & Gray, and the avails thereof to be applied for that purpose ; and have in like manner agreed to sell to each of the creditors of said firm whose name is hereunto subscribed, a number of shares in said capital stock equal to one half of each of said creditor's claim (so nearly as the same can be divided into an even number of shares,) against the firm of Fales & Gray, and to accept in payment for said shares the five negotiable notes of each said creditor of equal amounts, bearing date the 1st day of September, A. D. 1854, and payable two, four, six, eight and ten months from date respectively; and have in like manner agreed, and do hereby agree that they, the said Fales & Gray, will, while they are the sole holders· of the stock of said corporation, by a suitable vote, make the shares

purchased by said creditors as aforesaid a preferred stock, and have also in like manner agreed and do hereby agree to guarantee that the same shall earn to the holders thereof at least six per cent. per annum on the par value thereof, payable semi-annually for the term of five years; and have in like manner agreed and do hereby agree to transfer the remainder of the capital stock of said corporation, by them held, to a trustee to be approved of by said creditors, as security for the payment of said six per cent., and also for the indebtedness of the said Fales & Gray to the aforesaid creditors, (said trustee's stock being understood not to be preferred stock;) and have in like manner agreed and do hereby agree to close the proceedings contemplated as aforesaid, and to deliver stock certificates, within sixty days from the completed signature of this instrument; and whereas said Fales & Gray have in like manner agreed, and do hereby agree, after the consummation of this agreement, to pay the full amount of all claims against them as they shall hereafter mature in favor of said creditors; said agreements and arrangements being on the express condition, that no dividend shall be declared or made on the capital stock for the period of five years, except on the preferred stock as aforesaid, and that no creditor shall sell or transfer any of the aforesaid stock until all his stock-notes are fully paid; and also that no sale shall be made within said five years, unless with the condition attached thereto, that the shares so sold may be repurchased by said Fales & Gray during that period, at a rate or price not exceeding two per cent. per annum, from the 1st of September, 1854, above par, together with such portion of said six per cent. guaranteed as aforesaid, as shall have accrued thereon and be unpaid at the time of such sale; and also, that said Fales & Gray shall have the right to re-purchase said stock at any time within said five years from any or all their said creditors at a rate not exceeding the rate specified in the preceding clause :—Now we, the undersigned creditors of said Fales & Gray, in consideration of the premises, and of one dollar received to the full satisfaction of each of us from said Fales & Gray, have agreed, and hereby do agree,

each for himself, and with each other, and with said Fales & Gray, that, for the purpose of carrying into effect the aforesaid proposition of said Fales & Gray, and in consideration of their above written agreement, we will severally purchase of them a number of shares in the capital stock of the aforesaid corporation, (which is to be known by the corporate name of the "Grove Car Works,") equal in amount to one half of our several claims against said Fales & Gray, so far as said half can be reduced to a number of even shares of said stock, and will give our negotiable notes therefor, in the manner above provided, and will hold our said stock on the conditions above prescribed, and hereby stipulate with each other that the earnings and the avails of the property of the aforesaid corporation shall and may be appropriated to the payment of the out-standing claims of said Fales & Gray in the order of their future maturity; it being understood that this agreement shall not become obligatory, or take effect, until it shall have been signed by all the creditors of said Fales & Gray whose claims exceed $200, and excepting also the employees of said Fales & Gray. To these agreements all of the undersigned bind themselves and their several executors and administrators. Dated at Hartford the 5th day of September, 1854."

The agreement was not in fact signed by all the creditors of Fales & Gray whose claims exceeded the sum of $200, but those who did not sign were few in number, and the fact was well known to Fales & Gray, and to the corporation afterwards formed.

In accordance with this agreement and to carry it into execution, Thomas J. Fales, John S. Gray and William E. Caligan, on the 19th of September, 1854, in pursuance of the provisions of the statute relating to joint stock corporations, associated themselves as a corporation under the name of the "Grove Car Works," for the purpose of carrying on the business of manufacturing rail road cars, locomotives, machinery and vehicles of every description for transporting freight. The corporation was located at Hartford. Its capital was fixed at the sum of $200,000 and divided

into shares of twenty-five dollars each. The whole stock was taken by said Fales, Gray and Caligan as follows, to wit: the said Fales 3,980 shares, the said Gray 3,980 shares and the said Caligan 40 shares.

The first meeting of the corporation was held on the 4th of October, 1854, at which meeting the three stockholders were present and elected themselves directors of the corporation. The following votes were then passed, to wit:

Voted, That the stockholders in the corporation pay in at this meeting not less than fifty per cent. of the amount of their subscriptions to the capital stock.

Voted, That the board of directors be and are hereby authorized to invest the capital paid in, or such part thereof as is necessary therefor, in the purchase of the real and personal estate of the firm of Fales & Gray, and to receive conveyances thereof to the Grove Car Works from said firm, in accordance with the terms of their contract of September 5th, 1854.

Voted, That 3,600 shares of the stock of the Grove Car Works shall be and is hereby made "preferred stock" and the earnings of the corporation shall, until September 1st, 1859, be applied to the payment of interest on said preferred shares at the rate of seventy-five cents per share every six months, commencing on the 1st September, A. D. 1854, before such earnings shall be applied to the payment of any dividend on the remainder of said capital stock.

Voted, That no dividend shall be declared on the stock of said corporation other than the interest on the said preferred stock until after September 1st, A. D. 1859.

Voted, That the secretary whom the directors shall choose, be and is hereby authorized to prepare and issue stock certificates of said preferred stock in the form required by the aforesaid contract of Fales & Gray, and to prepare and issue appropriate stock certificates of the other shares.

Voted, That the directors be and are hereby authorized and empowered to apply the earnings and the avails of the property of this corporation towards the payment of the liabilities of the firm of Fales & Gray up to the 1st inst. in accordance with the contract of said Fales & Gray with

their creditors, dated 5th September, A. D. 1854, and entered on the records of this corporation.

The directors also on the same day held a meeting and passed the following vote :

Voted, That by virtue of the authority vested in the board of directors by the stockholders, the property of the firm of Fales & Gray be and hereby is accepted by this corporation in accordance with the deed recorded this day in favor of the Grove Car Works, and be applied to the payment of the stock in this corporation subscribed by Thomas J. Fales and John S. Gray, and the surplus of said property be applied to the extinguishment of the liabilities of said firm of Fales & Gray up to the 1st inst., in accordance with their contract of 5th ult. with their creditors.

Voted, That the stockholders having paid in the whole amount of their subscriptions this day, the fact be here recorded.

Fales & Gray, by deed of the 4th of October, 1854, in pursuance of their contract and the votes above mentioned, conveyed and delivered to the Grove Car Works real and personal estate to the amount of $200,000, according to the inventory price, as the capital stock of the corporation, and at the same time other real and personal estate to the amount of $140,197.82, according to the inventory price. The property conveyed was all of the real and personal estate of Fales & Gray, and was necessary for the business of the corporation. A certificate was lodged by the officers of the corporation in accordance with the statute, with the secretary of the state and with the town clerk of the town of Hartford, stating among other things the capital of the corporation to be " $200,000, the entire amount of which has been paid in."

The corporation took possession of the property thus conveyed to them and commenced business. They began to pay the debts of Fales & Gray in the order of their maturity, and continued to do so until the 21st of October, 1854, after which they paid only such as were secured by collaterals. On the 21st of October, they had paid of these debts between fifty and sixty thousand dollars, being all the debts of Fales

& Gray matured up to that time, among which was a note of Fales & Gray to the appellees of $180.54. The indebtedness of Fales & Gray on the 4th of October, 1854, was about $205,000. They were at that time indebted to the appellees by book account in the sum of $255. No credit had been given to Fales & Gray on the books of the appellees, nor had they charged the amount to the Grove Car Works.

The appellees delivered in the month of September, 1854, their note of two hundred dollars to Fales & Gray, dated September 1st, 1854, payable six months after date, to the Grove Car Works, and received a certificate of eight shares of stock, which they still held. Their note was paid by them at maturity.

The Grove Car Works on the 6th of March, 1855, made an assignment of all their estate, both real and personal, for the benefit of all their creditors, under the statute with regard to insolvent estates, and are now insolvent, and unable to pay the debts allowed by the commissioners; the appellant was appointed trustee of the estate, and commissioners were appointed to receive the claims of creditors of the corporation. The amount of claims presented to and allowed by the commissioners for debts originally contracted by the corporation is $18,909.64. The amount of claims presented and allowed against the corporation for debts originally contracted by Fales & Gray is $98,893.19.

The committee found the appellees to be creditors of Fales & Gray who had signed the agreement of the 5th of September, 1854, and that the Grove Car Works were indebted to them, if upon the foregoing facts, the court should be of opinion that they had assumed and become liable to pay the debt, otherwise not.

The superior court reserved the questions arising on the report of the committee for the advice of this court.

*Chapman* and *Fellowes*, for the appellant.

The claim presented to the commissioners, allowed by them, and appealed from, is a book debt against Fales & Gray.

The appellees claim that the Grove Car Works, a corporation, entered into a contract to pay this book debt, and are liable to them on this contract. We say in answer to this claim,

1. That the facts found by the committee do not show that the corporation had the legal capacity to make such a contract, and it is incumbent on the appellees to prove this fact. *N. Y. Firemens' Ins. Co.* v. *Ely,* 5 Conn., 560. *Same* v. *Bennett,* id., 574. *Hood* v. *N. Y. & N. Haven R. R. Co.*, 22 id., 1; id., 502. Rev. Stat., tit. 3, sec. 198.

2. The facts found do not show that any such contract was in point of fact made, but an entirely different contract if any, to wit: a contract that certain property of Fales & Gray in their hands might be applied to the payment of their debts. This was not the claim made before the commissioners, nor is it the claim made here. This is entirely a different thing from the assumption of the debt by the corporation.

3. If the facts found were sufficient to prove a contract on the part of this corporation to pay this debt of Fales & Gray, the statute of frauds intervenes and excludes them from the consideration of the court. It is an agreement to pay the debt of a third party and is not in writing.

4. The agreement of September 4, 1854, was by its express terms not to take effect unless signed by all the creditors of Fales & Gray whose claims exceeded $200. And it is found that all the creditors holding claims of that amount did not sign it.

5. It is a fraud upon the direct creditors of the corporation, who, having trusted the corporation on the strength of its certificate that its capital was all paid in, ought not to be compelled to lose a part of their claims, to enable the creditors of Fales & Gray to receive a part of theirs, the property being insufficient to pay in full.

*T. C. Perkins* and *Hooker,* for the appellees.

The creditors of Fales & Gray had originally a claim on all this property, and could have applied it all to the payment of their demands, and for the sole purpose of the better obtaining

payment, they consented that the Grove Car Works should take the property, agreeing themselves to take stock in the company to half the amount of their claims, and looking to the corporation for payment. All parties concerned agreed to this. The company received the consideration and voted to carry out the arrangement. No substantial reason can be shown why it should not now perform its agreement.

1. It is said that the company never agreed to pay. But the company took the property on the condition of payment, and it can not now keep the property and refuse to perform the condition. Besides, it did expressly agree to pay. By its vote it agreed to apply all its earnings and the avails of its property to the payment of these debts. And what has a corporation in any case to pay with, except its earnings and the avails of its property? It can not make a more absolute promise to pay, than by agreeing to apply these to the payment.

2. Again it is said, that the corporation had no power to make a contract binding itself to pay these debts. But it clearly had power to buy this property. It is found to be property necessary to the prosecution of its business. If it could buy the property of Fales & Gray, and pay them cash for it, which it clearly had the power to do, it could agree to pay their debts of a specified amount instead of paying cash. It is only a mode of paying for property purchased.

3. It is further said that the contract is within the statute of frauds and inoperative because not in writing. But it is in writing. The vote is written. The entry of the vote on the records of the company is tantamount to signing. Ang. and Ames on Corp., sec. 237. The record is always signed by the secretary, who is for this purpose the " agent " of the company within the statute. If not thus signed, yet the name of the corporation in the body of the vote is equivalent to a signature at the bottom. *Schneider* v. *Norris*, 2 Maule & Sel., 286. 2 Pars. on Cont., 1st Ed., 287. *Trueman* v. *Loeder*, 11 A. & E., 589. But this case is not within the statute, because the funds with which to pay the debt were

placed by the debtor in the hands of the party promising. 1 Sw. Dig., 253. It is thus a promise made on a new consideration. Further, it is not within the statute because the promise is made to the debtor and not to the creditor. *Hilton* v. *Dinsmore*, 21 Maine, 410. *Pratt* v. *Humphrey*, 22 Conn., 317. But the matter has no connection with the statute of frauds. It is, as before suggested, a mere purchase of goods and a promise to pay for them in this particular mode.

4. Again it is said, that the agreement of September 4, 1854, which is the basis of the whole undertaking, never took effect because not signed by all the creditors who by its terms were to sign it. But the corporation having taken the property under that agreement and still retaining it, can not now be heard to say that the agreement did not take effect. The company knew that all had not signed, but chose to go on as if all had done so. It has therefore waived the objection. Besides it was a condition inserted in the agreement, not for the benefit of the corporation, but only for that of the creditors, that those who signed the agreement need not be held unless all signed it. It had no reference to any interest of the corporation in the matter, and the failure to procure the names of all has caused no injury to the corporation.

5. Again it is said, that it is inequitable that the creditors of Fales & Gray should be paid, while the direct debts of the corporation can not be paid in full. But how is it any more inequitable to require payment from the corporation for property bought of Fales & Gray, than for property bought of any body else. Had the same precise property been bought on credit of a stranger, no one would regard it as inequitable that his claim should stand on an equality with any other claim presented against the corporation. It is a perfect debt, and therefore as good as any other debt, which can be no more than perfect.

ELLSWORTH, J. It appears from the record, that Thomas J. Fales and John S. Gray were copartners under the name of Fales & Gray, in September, 1854, in the business of

manufacturing railroad cars. The value of their estate, real, and personal, was, as then estimated, $440,000, and their indebtedness was $205,000. Being somewhat embarrassed, in order to obtain relief, on the 5th day of September, they agreed with their creditors, (with exception of a few,) to form a joint stock company, under the statute law of the state, with a capital of $200,000. They were at once to convey all their property above mentioned to this joint stock company, $200,000 of it to be considered as the capital, and the surplus to be held by them, the better to enable them to pay the debts of the firm of Fales & Gray.

The corporation was formed, and being organized took a conveyance from Fales & Gray of said property to the estimated value of $440,000. They took the name of "The Grove Car Works," and passed a resolution to appropriate the avails and earnings of the business to the payment of the said debts of Fales & Gray.

After carrying on the business a few months, the corporation failed, and on the 5th day of March, 1855, assigned its property under the statute for the benefit of creditors, and Mr. Waterman was appointed trustee by the court of probate. The appellees and others presented their claims to the commissioners for allowance. So far as they consisted of the old debts of Fales & Gray, (and this was one of them,) the trustee claimed that they should not be allowed by the commissioners, for the reason that the new corporation could not and in fact did not assume them; and upon this appeal from the allowance of these claims by the commissioners, the chief question is, whether the corporation had the power to do this, and in fact did it.

We think there is no question but that the corporation assumed the debt now in question, and the other existing debts of Fales & Gray, so far as the creditors of Fales & Gray signed and became parties to the instrument of the 5th of September. The entire arrangement proceeds upon this idea, as its very basis and motive. These creditors were to renounce their claims against Fales & Gray, so far as the property of Fales & Gray was concerned, and allow it to

pass into the hands of the corporation, in order to enable the corporation to carry on its business and pay the old and any new creditors as agreed. They likewise as a part of the arrangement executed their notes to the corporation, still more to aid it in the execution of the trust. And more than this, such assumption of the debts of Fales & Gray is expressly stated in the instrument as the condition of its receiving and enjoying the property. After this, it would be strange indeed if the corporation could retain the property and repudiate the conditions upon which it was received. So too, the corporation, by its express vote, passed in all good faith, undertook to apply the earnings and avails towards this class of debts. On the whole, we do not entertain any doubt but that the Grove Car Works assumed the debt in question.

But it is said that the corporation was not authorized to assume the debts of Fales & Gray. If by this is meant that the corporation had no power to purchase the stock, tools, &c., of Fales & Gray, and contract to pay for them by assuming debts, provided it was done *bona fide*, so as to continue the same business under the new organization, we must say the appellant is mistaken. It could purchase this property as well as any other property without injuring the creditors of the company. The property necessary for carrying on the business must be had from somebody, and why may it not be purchased of Fales & Gray, especially with the consent of their creditors. But if it is meant that this transaction is not consistent with the certificate lodged by the joint stock corporation with the clerk of the town of Hartford, that the corporation started with a capital of $200,000 free of charge, and that *bona fide* creditors of the Grove Car Works, who, relying on the certificate as true, gave credit to the corporation, may complain that they were deceived and are in danger of being injured, we are not prepared to say that there may not be force in the objection; but then this is no reason why the commissioners should not allow this claim, for at all events, if our first position is correct, the debt is a good one against the corporation, and the question of

priority among creditors must be raised, if any where, in the court of probate, when the order for distribution of the effects shall be obtained. The unpaid debts of Fales & Gray amount to $99,000, and the unpaid debts contracted by the Grove Car Works are $18,000. How these debts are to stand in relation to the property to be divided, we shall not undertake to say, for no such decision is called for.

The statute of frauds has been urged as an objection to the assumption of the debts of Fales & Gray by the Grove Car Works. There is no such assumption proved by writing it is said. Our answer is, 1st. There is a good one in law, against the corporation, created by its receiving and retaining the property of Fales & Gray, which it received and retains upon the terms and conditions expressed in the instrument upon which their title to it depends; 2d. The corporation, by a vote in writing, assumed to pay these debts; and 3d. The corporation assumed the debts upon a new and original consideration. It received property, as then valued, to the amount of $440,000, and in consideration thereof promised to pay these debts. 1 Smith. Lead. Cases, 329, 331. Besides, a special promise to answer for the debt, default, or miscarriage of another, is one which is made to the person to whom another is answerable, and not to the debtor himself, as this court held in *Pratt* v. *Humphrey*, 22 Conn., 317. See also *Hilton* v. *Dinsmore*, 21 Maine, 410.

We attach no importance to the circumstance that the instrument of the 5th of September contains a provision that it shall not take effect until signed by all the creditors of Fales & Gray whose claims exceed $200. The appellees and most of the creditors signed the instrument, and thereupon the property of Fales & Gray was granted and delivered to the corporation, who accepted it and have made use of it in their business as they saw fit. The corporation can not now object because some others of the creditors of Fales & Gray did not sign the instrument. This is no injury to them. The corporation should not have taken the property and gone on under the new arrangement, if it intended to require

that this condition of the instrument should be complied with.

We advise judgment for the appellees.

In this opinion the other judges concurred.

Judgment for the appellees.