BAILEY ET AL., PLAINTIFFS IN ERROR, v. LAY ET AL., DE-FENDANTS IN ERROR.

1. PAYMENT AND DELIVERY—MUTUAL AGREEMENTS.

Where a written contract for the sale and conveyance of real property provides that the deed shall be delivered at the time of making the first payment, the agreement to pay and the agreement to deliver are mutual and dependent agreements, and performance, or an offer to perform by the purchaser, is necessary to make it incumbent upon the seller to deliver the deed,—such is the general rule.

2. MODE OF PAYMENT AND DELIVERY.

The fact that the delivery of the deed and the payment of the money under a contract, are to be acomplished through the organization of an incorporated company and the issuance and transfer of shares of stock, does not change or affect the application of the rule in regard to time of performance.

3. PLEA OF PERFORMANCE.

An averment that the purchaser is ready and willing to accept the property and make payment therefor according to the contract, is not, under ordinary circumstances, equivalent to an averment of payment, or of an offer to pay.

*Error to the District Court of Arapahoe County.*

ACTION to recover damages for breach of contract to convey certain mining property, and to have the amount recovered declared a lien upon such property. The demurrer to the amended complaint was sustained, and judgment was rendered for defendants, dismissing the action. Plaintiffs bring the cause to this court by writ of error. The complaint demurred to was as follows :

"The plaintiffs complaining of said defendants say :

"That heretofore and on and before the first day of October, A. D. 1886, the said defendants Lay, Mallory and Brown were possessed of those certain premises situate in the Battle Mountain Mining District in the county of Eagle and state of Colorado, commonly called the Iron Mask Mining Property and consisting of those certain lode mining claims located and known as The King Fisher, the Little Ollie, the Little Bell, the Iron Mask, the Little Prince, the Cleopatra, the Clinton and the Florence Lodes, and were lawfully entitled to the said premises, or, claiming so to be, in fee simple absolute, the said Mallory and the said Lay being severally entitled to five twelfths thereof and the said Brown to an undivided two twelfths thereof, and being so possessed of and entitled to the said premises the said defendants on or about the day and year aforesaid entered into a certain verbal agreement with the said plaintiffs and one Edwin C. Root, to the effect following, among other things therein set forth,

to wit: that said plaintiffs should and might cause the said mining premises to be sold for the price and sum of $1,500,000, and should and might cause to be organized a corporation for the purchase thereof with a capital stock of 500,000 shares. And that in consideration of their services in that behalf in effecting such sale, plaintiff, the said John W. Bailey, should and might obtain of his own use one tenth part of the capital stock of such corporation, and the said Morris, Vincent and Root also one tenth part of said capital stock.

" That in pursuance of the said authority and employment the said John W. Bailey shortly after entering into the said agreement visited, inspected and examined the said mines and the shafts, tunnels and other workings thereon, and both the said John W. Bailey and the said Morris, Vincent and Root made divers journeys and carried on divers negotiations by word of mouth and by letter and telegrams towards and for effecting such sale of the said mining premises.

" That in virtue of the said employment and authority the said John W. Bailey on or about the 16th day of March, A. D. 1887, applied to the said defendant Henry Cummins to purchase the said mining premises, and during and for many days the said John W. Bailey explained and set forth to the said Cummins the great value of the said premises, and that large gains and profits might be made by the organization of a corporation for the purchase of the said mining premises at the price aforesaid; and on or about the day and year aforesaid, the said John W. Bailey and the said Henry Cummins (moved by the representations of the said John W. Bailey before set forth) entered into a certain agreement in writing, whereby, after reciting that the said John W. Bailey was claiming certain rights authorizing him to negotiate the sale of the said Iron Mask Mining property, and has stated that from his own personal knowledge he believed that said property was of the value set forth in a certain report thereon before that time made by one Ernest Le Neve Foster, mining and consulting engineer, by the said John W. Bailey theretofore submitted to the said Cummins, and that further

developments had been made in the property since the date of that report, vastly enhancing the value, and that he, the said Bailey, believed there were, at the date of the said agreement, between the said Bailey and the said Cummins, yet 130,000 tons of ore developed in the mine of the character stated in the said report of the value of $30.00 per ton, and that defendant Henry Cummins represented parties who desired to purchase the said property for not exceeding $1,500,000, or any other sum which might be agreed upon, provided the same were of the character and value as stated; it was agreed that said Cummins would proceed at once with a competent expert, to wit: Mr. E. E. Olcott, E. M., of the city of New York, and make thorough examination of the said property at his own charge and expense; that if said Cummins should find said property to be of a satisfactory character and value, he would at once organize or cause to be organized the Iron Mask Mining and Smelting Company with a capital stock of 500,000 shares, and would pay or cause to be paid at the time of delivery of the deeds in escrow conveying the said property to the said company in fee simple free from all incumbrances, the sum of $250,000 on the purchase price of said property, and the remaining sum of $1,250,000, or such other sum as might be agreed upon, to be paid in such installments or at such times as might be thereafter agreed upon with the then present owners of the property.

"That said Bailey should have the right for himself and his associates to take 100,000 shares of the capital stock of said company at the rate of three dollars per share for the whole or any part thereof, and that he should make payment for the same at any time prior to the final payment or payments to that extent on the purchase price of said property, that is, that he should pay for the stock in sufficient time that the proceeds thereof might be applied, to the extent of his purchases, to the final longest deferred payment on said property; that said Olcott should have the right to purchase 100,000 shares at the rate of three dollars per share for the whole or any part thereof, and said Cummins the right to

take 225,000 shares of said stock at the rate of three dollars per share for the whole or any part thereof, and the remaining 75,000 shares should be disposed of for such sum as might be deemed for the best interest of such company at the rate of not less than three dollars per share ; and in and by the said agreement the said Cummins agreed to notify the said Bailey, in writing, within ten days from the commencement of the examination of said property, whether it was of sufficient value to warrant them in proceeding in the organization of said company or not, and if affirmatively then said agreement would be in force and to be carried out, but if negatively then the said contract should, from that date, be null and void.

" Plaintiffs further aver that afterwards, and on the 16th day of March, A. D. 1887, the said John W. Bailey, by his indorsement upon the said last recited agreement under his hand, assigned one half interest in the said contract to the said Morris, Vincent and Root of Denver, reciting in the said agreement that the same was made in pursuance of a former verbal agreement with them. That afterwards and on or about the 5th day of November, A. D. 1887, the said Edwin C. Root, for divers valuable considerations assigned, transferred and set over to the said plaintiffs Charles H. Morris and Justus H. Vincent all his interest in the last before recited agreement and in the damages demanded in the present action.

" Plaintiffs further aver that afterwards and on or about the 16th day of March, A. D. 1887, the said Henry Cummins and the said E. E. Olcott in the last mentioned agreement named, and who plaintiffs aver is one of the defendants in this suit, departed from the said city of New York and proceeded to the said mining premises and at great expense made thorough and full examination and inspection of the said mining premises and the shafts, tunnels, adits and other workings thereof, and extracted therefrom great numbers of samples of the ores thereof and procured the said samples to be assayed, and being convinced by such examination of the great value of the said premises the said Cummins and the said

Olcott on or about the 22d day of March, A. D. 1887, entered into a certain agreement in writing with the said William F. Lay (acting as plaintiffs say on information and belief as well for said Mallory and said Brown, as for himself) to the effect following among other things therein set forth and contained, to wit :

" First : That the said Lay should transfer the said Iron Mask Mining property with all the ores therein contained, the appurtenances, buildings and improvements thereunto belonging for the sum of $1,500,000, payments to be made in the following manner, if the said property should be accepted by the said Cummins and Olcott after full examination to be concluded by the 1st day of April, A. D. 1887, to wit : $250,000 cash on April 1, 1887 ; $250,000 on or before June 1, 1887 ; $204,000 on or before August 1, 1887, and the balance of $796,000 on or before November 1, 1887. That the deed for said mining property should be made to the Iron Mask Mining and Smelting Company, thereafter to be organized by the said Cummins and Olcott by the said Lay, Mallory and Brown, and delivered to the trustee in the said agreement afterwards named, at the time of the first payment therein as specified.

" Second : That the Iron Mask Mining and Smelting Company should be organized under the laws of the state of New York, with its principal office in New York city, and should consist of 500,000 shares of stock of the par value of one dollar each. That the said shares should be delivered to the said Lay and by him placed in escrow with the First National Bank of New York city, trustee, on the following conditions, to wit:

" That at the time of the first payment of $250,000 the said deed to the said property should be delivered to the Iron Mask Mining and Smelting Company and 83,000 shares of said stock should be delivered to the subscribers thereto on the payment of $3.20 per share, amounting to $265,600, of which $250,000 should be paid to the said Lay on the first payment as above stated, and $15,600 should be paid to the

treasurer of the Iron Mask Mining and Smelting Company to be held by him as a smelting works fund. That on or before June 1, 1887, said trustee should deliver to the subscribers thereto 83,000 shares of said stock at $3.20 per share, amounting to $265,600, of which $250,000 should be paid to said William F. Lay as the second payment on said property, and $15,600 should be paid to the treasurer of the Iron Mask Mining and Smelting Company as a second payment to the Smelting Works fund.

" That on or before August 1st, said trustee should deliver to the subscribers thereof 68,000 shares of said stock at $3.20 per share, amounting to $217,600, of which $204,000 should be paid to William F. Lay as the third payment on the above property, and $13,600 should be paid to the treasurer of the Iron Mask Mining and Smelting Company as a third payment to the Smelting Works fund. That on or before November 1, 1887 said trustee should deliver to the subscribers thereto 266,000 shares of said stock at $3.20 per share, amounting to $851,200, of which $796,000 should be paid to the said William F. Lay as the final payment on the Iron Mask property as above, and $55,200 to the treasurer of the Iron Mask Mining and Smelting Company, as the fourth or final payment to the Smelting Works fund.

" Third: That as therein above set forth the said Lay was entitled to three dollars per share in payment of the said Mining property, and that twenty cents per share should be devoted to the Smelting Works fund.

" Fourth : That the parties who subscribed for and take the first 83,000 shares of said stock should thereby acquire the right to subscribe for and take a like portion of stock of any subsequent payment as therein above provided, and that the failure of any subscriber to exercise his option to take shares at any payment, his right to take his portion of stock at that and any subsequent payment should cease, and each subscriber should give written notice to the said trustee fifteen days prior to any payment that he would take his portion of shares at the time thereof, otherwise the remaining

subscribers should have the right to take said stock in proportion to their several subscriptions.

" Fifth : That any and all dividends declared by said company from the profits in the ores derived from said mines, prior to the final payment as aforesaid, should be paid to the order of said Lay and applied on the next subsequent payment on said property, and said sum should go to the reduction of the subscription price of the shares on said payment. That the shares belong to said William F. Lay and were by him placed in escrow as aforesaid, subject to the options in the said agreement named upon the said stock, and on the failure of any subscriber to make any payment at the time stipulated, the shares on which default has been made should thereupon be delivered by the trustee to said Lay or his order.

" Sixth : That the first board of directors should consist of the said William F. Lay, the said D. D. Mallory, the said A. H. Brown, Mr. Alfred Van Santvoord of New York and the said E. E. Olcott, and that at the time of final payment on said property the three directors first as above named should tender their resignations.

" Seventh : That the officers of said company should be the said William F. Lay, President, the said E. E. Olcott, Vice President and General Manager, and the said Alfred Van Santvoord, Secretary and Treasurer.

" Eighth : That the subscribers to the first 83,000 shares of said stock should be as follows, to wit: the said William F. Lay 26,000 shares ; the said Henry Cummins 26,000 shares ; the said John W. Bailey (therein named J. W. Bailey) 16,000 shares, and the said E. E. Olcott 15,000 shares.

" Plaintiffs further aver that afterwards and on or about the said 23d day of March, 1887, the said Cummins, in pursuance of his before recited agreement with the said John W. Bailey, did notify the said John W. Bailey to the effect that the said property was of sufficient value to warrant them in proceeding with the organization of said company, whereby the said first before recited agreement between the said Cummins and the said Bailey became and was in full force and

effect; and that afterwards and on or about the 31st day of March, 1887, the said Cummins and the said Olcott accepted the said property, and gave notice in writing to the said William F. Lay of such acceptance, according to the terms of the before recited agreement of the 22d day of March, 1887; and that they were ready to make the first payment thereon according to the terms stated in said agreement.

" The plaintiffs further aver that on or about the 22d day of March, A. D. 1887, aforesaid, the said Mallory and the said Brown, being informed of the execution by the said Lay of his before mentioned agreement with the said Cummings and the said Olcott, assented to and ratified the same; but notwithstanding the foregoing promise the said William F. Lay, the said Dwight D. Mallory and the said Albigence H. Brown did not nor would not nor would either of them at the time by them in their said agreement in that behalf covenanted, make or deliver any conveyance of the said mining premises to the said Iron Mask Mining and Smelting Company; and although, by the terms of the said agreement it became and was the duty of the said Lay and the said Mallory and the said Brown before that time, to wit: before the first day of April, 1887, to attend and be at the said city of New York, and to there participate in and about the organization of the said Iron Mask Mining and Smelting Company, and by said agreement it became and was the duty of the said William F. Lay not only to deposit or cause to be deposited with the First National Bank of New York city as trustee the deed conveying the said mining premises to the said Iron Mask Mining and Smelting Company, but also the certificates of the capital stock of said company, in order that in pursuance to the said agreement the same might be delivered to the subscribers thereto, yet the said Lay, Mallory and Brown did not nor would nor did either of them attend at the said city of New York, nor assist nor participate in the organization of the said corporation, nor did they or either of them cause any such conveyance nor such certificates of stock nor any of them to be deposited with the said trustee, but falsely claiming and

pretending that by the terms of said agreement $250,000 in cash must and should be deposited to the credit of said William F. Lay and the said Mallory and Brown, or some of them, before delivery or deposit of such deed of conveyance; they and each of them wholly failed and neglected to observe and perform the covenants in the said agreement contained or any thereof; and although afterwards and on or about the 31st day of March, 1887, the said Cummins and the said Olcott did procure the said Iron Mask Mining and Smelting Company to be incorporated under the laws of the state of New York, with its capital stock, directors and officers, conformable to the said agreement, and although afterwards at divers times before the 15th day of April, 1887, the said Cummins and Olcott and the said Iron Mask Mining and Smelting Company, notwithstanding the default aforesaid, of the said Lay, Mallory and Brown, were ready and willing to accept the said premises and make payment therefor according to the terms, letter and spirit of the said agreement, provided the said Lay, in refutation of certain rumors and charges, which, at about that time, had come to the ears of said Cummins and Olcott, of certain corrupt practices alleged against the said Lay in respect to the examination of said mine and the ore samples taken therefrom as aforesaid, would produce and deliver to the said Olcott smelter's returns of the ores before that time extracted from the said mine; and although the said Lay frequently promised to produce and deliver the said returns in refutation of the said charges and accusations, yet the said Lay on divers pretenses and excuses always avoided compliance with his said last mentioned promise, and on or about the 15th day of April, A. D. 1887, abandoned the said negotiation and departed out of the United States in order to sell and dispose of the said mining premises to other persons whose names are to the plaintiffs unknown, and afterwards, at some time to plaintiffs unknown, said Lay, Mallory and Brown, as the plaintiffs are informed and believe and therefore on information and belief aver, entered into some agreement to sell and convey the said Iron Mask Mining

property, and the whole thereof, to some other persons or corporation whose name is to the plaintiffs unknown.

" And the said plaintiffs say that in and about the making of the said agreement with the said Henry Cummins, the said John W. Bailey was acting under and in pursuance of the authority of the verbal agreement aforesaid with the said William F. Lay, and that the agreement aforesaid of the said Olcott and Cummins with the said William F. Lay was induced, and was made and entered into, in pursuance of the aforesaid agreement of the said John W. Bailey with the said Henry Cummins, and as well for and on behalf of plaintiff, the said John W. Bailey, and the said Morris, Vincent and Root, as for the behalf of said Cummins and Olcott, and plaintiffs further say that next after the making of the said last mentioned agreement, plaintiff, the said John W. Bailey, being by the said Henry Cummins informed thereof, assented thereto, and agreed to and with the said Henry Cummins and the said E. E. Olcott, and to and with the said Iron Mask Mining and Smelting Company, after the formation thereof, to subscribe for and take the said sixteen thousand (16,000) shares of stock in and by the said agreement allotted to him, and pay therefor, and that afterwards the said John W. Bailey contributed divers large sums of money, to wit, one hundred dollars (100) or thereabouts, towards and for the expense of organizing and incorporating the said Iron Mask Mining and Smelting Company, of all which said last mentioned premises the said Lay, Mallory and Brown before the said first day of April, A. D. 1887, had notice.

" Plaintiffs aver that the said Cummins and Olcott duly kept and performed all the conditions of the before recited agreement with the said Lay, Mallory and Brown, by them to be kept and performed, and that said Lay, Mallory and Brown have broken their said agreement in the manner and form as aforesaid.

" The plaintiffs further aver, on information and belief, that the said Iron Mask Mining property, on the first day of April, 1887, and when the said agreement for the sale there-

of, before that time entered into between the said Lay (for himself and said Mallory and Brown) and the said Cummins and Olcott, should have. been performed, was of the value of $7,500,000. That the said John W. Bailey, by the agreement aforesaid, between the said Lay (for himself and said Mallory and Brown) and the said Cummins and Olcott, became and was entitled to 106,656 shares of the capital stock of said corporation at and for the price of $3.20 per share, and upon the acceptance of the said premises by said Cummins and Olcott and their election to purchase the same the said John W. Bailey became and was entitled to purchase the said 106,656 shares of said stock at the price aforesaid, and became and was entitled in the same proportion, as aforesaid, in the said mining premises as to the dividends, gains and profits from the operation of the said mining premises arising. And that on the first day of April, A. D. 1887, there was developed and shown in the said mining premises great quantities of gold and silver bearing ores of great value, to wit: of the value of $12,000,000 and the said John W. Bailey, by the default as aforesaid, of the said Lay, Mallory and Brown, was deprived of great gains and profits, to wit: of $750,000 which, but for the default of the said defendants before set forth, he the said John W. Bailey might and would have received.

" And plaintiffs aver that by the default aforesaid, of the said Lay, Mallory and Brown, the said John W. Bailey was damaged in $750,000.

" The plaintiffs further aver that one half part of the damages, the said John W. Bailey hath assigned to the said Charles H. Morris and Justus H. Vincent, and that the whole of the said moneys are now due and payable; one half part thereof to the said John W. Bailey and one half part thereof to the said Morris and Vincent.

" Plaintiffs further aver, on information and belief, that the said Henry Cummins and the said E. E. Olcott are proposing to release to the said William F. Lay the said Dwight D. Mallory and the said Albigence A. Brown, or to one of them, all their rights in the said premises and all rights what-

soever which either of them may have, by virtue of the before
recited agreement of March 22, 1887; and the said Cummins
and Olcott refused to enter with the plaintiffs, although re-
quested thereunto, into any action whatsoever for the asser-
tion of the rights of the plaintiffs under the said agreement
or for the recovery of the said damages; that said Iron Mask
Mining and Smelting Company is wholly controlled by the
said defendants, and any such demand of such company would
be useless and unavailing.

"Plaintiffs further aver, on information and belief, that
notwithstanding the before recited agreement by the said Lay,
Mallory and Brown for the sale of the said premises to some
other parties, the title to the said premises still remains fully
vested in the said Lay, Mallory and Brown, and the said last
agreement has, as plaintiffs on information and belief aver,
been abandoned.

"Wherefore, plaintiffs pray judgment against the said
William F. Lay, Dwight D. Mallory and Albigence H. Brown
for the sum of $750,000, their damages aforesaid by them sus-
tained as aforesaid, and for costs, and that the moneys which
may be adjudged due them for their damages be declared a
lien on the said Iron Mask Mining property, before described,
and that the same be sold for the satisfaction of the said
damages and costs."

Messrs. WELLS, McNEAL & TAYLOR, for plaintiffs in error.

Messrs. WOLCOTT & VAILE, for defendants in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The sustaining of the demurrer to the amended complaint
is assigned for error. The demurrer specifies several grounds
of objection; but upon this review it is only necessary to
consider whether the complaint states facts sufficient to con-
stitute a cause of action against the principal defendants, Lay,
Mallory and Brown.

Plaintiffs claim to recover for the breach of a certain written agreement, entered into March 22, 1887, between the defendants Cummins and Olcott of the one part, and the defendant Lay, acting for himself and for his codefendants Mallory and Brown, of the other part. It is alleged, also, that said agreement was made by Cummins and Olcott in pursuance of authority from, under a contract with, and for the benefit of, plaintiffs, as well as for the benefit of Cummins and Olcott, who are made defendants in the action because they refused to join as plaintiffs. Code, sec. 12.

The gravamen of the complaint is, that defendants Lay, Mallory and Brown refused to make and deliver a deed of conveyance of their certain mining property to the Iron Mask Mining and Smelting Company, as by said agreement in writing they had contracted to do. According to the terms of the written agreement the defendants were to deliver the deed to the mining property at the time of the first payment of $250,000 which sum was to be provided for as follows: The Iron Mask Mining and Smelting Company was to be organized as a corporation with a capital stock of 500,000 shares. Of these shares Lay was to take 26,000, Cummins 26,000, Bailey 16,000, and Olcott 15,000, each paying therefor at the rate of $3.20 per share, thus raising a fund of $265,600. Of this fund $250,000 was to go to the owners of the property, and the residue to the treasurer of the corporation as a Smelting Works fund.

The agreement in regard to the first payment and the agreement to deliver the deed were to be performed at the same time; they were mutual and dependent agreements; and performance or an offer to perform in respect to first payment was necessary to make it incumbent upon the defendants to deliver the deed. *Englander v. Rogers*, 41 Cala. 420; *Bakeman v. Pooler*, 15 Wend. 637; 2 Parsons on Contracts, 528, 675; 2 Chitty on Contracts (11th ed.), 1082.

The complaint alleges that plaintiffs' associates, Cummins and Olcott, and the Iron Mask Mining and Smelting Company, notwithstanding the default of the defendants in respect

to the delivery of the deed, " were ready and willing to accept the said premises and make payment therefor according to the terms, letter and spirit of the said agreement." The condition stated in the complaint in respect to the refutation of certain rumors upon which the above named parties were ready and willing to accept and pay, need not be considered, since the complaint nowhere contains any averment to the effect that the first payment of $250,000, or any part thereof, was paid or offered to be paid, at any time, by any party or parties, upon any condition whatsoever.

The averment that Cummins and Olcott and the Iron Mask Company were ready and willing to accept the premises and make payment, is not equivalent to an averment of payment or of an offer to pay. In a case of this kind, when the time for payment has actually arrived, mere readiness and willingness to pay are immaterial—such readiness and willingness, without more, will not discharge contract obligations. An averment of readiness and willingness to pay presents nothing tangible or substantial; it involves little more than the state of mind of the party presenting the plea; and the determination of an issue taken thereon would not decide the rights of the parties. On the other hand, an averment of payment or of an offer to pay, is an averment of an overt act —an important and substantial fact; and the determination of an issue taken thereon would, subject to other issues in the case, be decisive of the controversy. Hence it is, that to state a cause of action in a case of this kind the law requires that the complaint shall contain a direct and positive averment of payment, or of an offer to pay.

The fact that the delivery of the deed and the payment of the money under the contract was to be accomplished through the organization of an incorporated company and the issuance and transfer of shares of stock, does not change or affect the application of the rule in regard to the time of performance; nor does it affect the rights of the parties that the owners of the property may have been bound to accept the 26,000 shares of stock which Lay agreed to take at $3.20 per share, as part

of the first payment, since it is not alleged that the residue of the first payment or any part thereof, as specified, was either paid or offered to be paid.

Giving the written agreement as pleaded a fair and reasonable construction, it clearly appears that the intent of the parties was that the whole transaction, up to and including the first payment as specified, should be consummated simultaneously. There is nothing in the conduct of the parties, nor in the written agreement as stated in the complaint, to indicate that Lay or any of the owners of the mining property had any desire or intention to organize a corporation and issue shares of stock, unless, by so doing they could dispose of their property and receive therefor the payments as specified in the written agreement; and they had the right to retain their property in their own individual names, unless, concurrently with its transfer to the corporation, the first payment as provided by the written agreement was paid or tendered for their acceptance.

The complaint does not show such a performance or offer to perform by plaintiffs or their associates as made it incumbent upon defendants to deliver the deed. The ruling of the trial court sustaining the demurrer was, therefore, right, and must be affirmed.

*Affirmed.*

## UPON REHEARING.

PER CURIAM: Upon the rehearing it is contended that plaintiffs were employed by defendants Lay, Mallory and Brown as brokers to sell the mining property of said defendants; and that the averments of the complaint are sufficient to maintain an action for commissions.

The complaint sets forth at length three separate agreements. The first agreement was verbal; it was entered into October 1, 1886, between plaintiffs and the defendants Lay, Mallory and Brown, whereby it was agreed that plaintiffs might cause the mining property of said defendants to be sold

for the price of $1,500,000, and might cause a corporation to be organized for the purchase thereof. That in consideration of their services in effecting such sale plaintiffs might *obtain* a one fifth part of the capital stock of such corporation. By such agreement it is not to be understood that plaintiffs were to receive one fifth of the capital stock as compensation for the mere service of organizing a corporation to which the mining property could be conveyed. The fair construction of the agreement is, that plaintiffs might obtain a one fifth part of the stock of such corporation upon condition that said defendants should receive the full sum of $1,500,000 for their mining property by the sale of the remaining four fifths of the stock, or otherwise.

The second agreement was in writing; it was entered into March 22, 1887, between the plaintiff Bailey and the defendant Cummins, and is to the effect that, if said mining property should be found satisfactory in character and value, upon examination, a corporation should be organized in which said Bailey and Cummins should have the right to purchase a certain amount of the capital stock.

The third agreement was in writing; it was executed by defendants Cummins and Olcott of the one part, and the defendant Lay of the other part, Cummins and Olcott acting, as it is alleged, for plaintiffs and their associates as well as for themselves; and Lay acting for himself and also for his codefendants, Mallory and Brown. In determining whether or not a cause of action is alleged under the third agreement, its provisions must be considered and construed in the light of the two former agreements, and in connection with the acts and doings of the several parties thereto or interested therein, as alleged in the complaint.

The third agreement provides for the sale of said mining property through the organization of a corporation, and the disposal of its capital stock. By this agreement the defendants Lay, Mallory and Brown were to receive the full sum of $1,500,000 for their property, though as a means of raising a part of such sum it was provided that. the defendant Lay

should subscribe and pay for certain shares of the capital stock at a certain price per share. With this exception, said defendants by the third agreement were to make no deduc- tion from the full purchase price of $1,500,000; nor did they undertake to pay any commissions, nor in any way to com- pensate plaintiffs for their services. Plaintiffs were to have the privilege of subscribing and paying for a certain portion of the capital stock at a certain price per share.

It cannot be maintained under and by virtue of any of the agreements, or any of the averments of the complaint, that plaintiffs are entitled to recover commissions as brokers. It is true, the third agreement provides for the sale of the prop- erty upon certain terms and conditions; but the only benefit plaintiffs could derive from the consummation of the sale was the privilege of purchasing at a specific price a certain por- tion of the capital stock of the corporation to which the min- ing property was to be conveyed.

The conclusion of the complaint shows that the action is for damages against the owners for their refusal to deed the premises, rather than a suit for commissions. The prayer is for judgment against the owners for the sum of $750,000, the amount of the *gains and profits* which it is alleged plaintiffs might and would have realized from the purchase of their share in the capital stock but for the default of the owners in consummating the agreement of sale; the further prayer is that such judgment be declared a lien upon the mining property, and that said property be sold to satisfy such dam- ages and costs. Such averments and prayers are entirely in- consistent with the claim that the suit is for commissions.

Does the complaint state a cause of action on the theory that plaintiffs were purchasers? The pleader undertakes to allege a breach of the third agreement in certain particulars. It is alleged that the defendants Lay, Mallory and Brown would not make a conveyance of the mining property to the corporation, nor deposit such deed of conveyance with the trustee mentioned in the agreement, nor participate in the or- ganization and issuance of the capital stock of the corpora-

tion. In respect to these averments it need only be said that the agreement does not provide that said defendants should organize or participate in the organization of the corporation, except that they should be named as directors and officers thereof; besides, it is alleged that the corporation was duly organized. The issuance of the stock would have been of no avail to·anyone, without the conveyance of the mining property to the corporation; and by the terms of the agreement the delivery of such conveyance was to be concurrent with the performance of certain acts by plaintiffs and their associates.

It is true, the complaint alleges that Cummins and Olcott, associates of plaintiff, duly kept and performed all the conditions of the agreement with said Lay, Mallory and Brown by them to be kept and performed. But in view of the other averments of the complaint, it is clear that this averment cannot be taken to mean that Bailey and Cummins and Olcott had each severally offered to pay for and take the number of shares of stock by them to be taken and paid for as a means of raising their quota of the first cash payment of $250,000.

As was said in our first opinion, *supra*, the gravamen of the complaint—the real gist of the action—is the alleged breach of defendants to make and deliver a deed of the mining property to the corporation. This the defendants Lay, Mallory and Brown had agreed to do upon certain conditions. The essential condition was that they should receive the first payment of $250,000 *at the time of the making and delivery of the deed.*

Counsel for plaintiffs contend that it is·not necessary that actual payment or offer to pay should be alleged, but that the averment that Cummins and Olcott were ready and willing to accept the premises, and ·make payment therefor according to the terms of the agreement, is sufficient. Such an averment may suffice under some circumstances, but it is not the general rule applicable to cases of this kind. Counsel cite *Smith v. Lewis*, 26 Conn. 109–118, in support of their view. In that case, where the sufficiency of the declaration

was considered after verdict, the declaration alleged a readiness and willingness on the. part of plaintiff to perform all the acts to be done by him, particularly describing them, on the day mentioned for their performance in the agreement; it also alleged that the defendant did not perform, fulfill or keep anything in the agreement on his part to be kept and performed, but on the contrary wholly neglected and *refused*, and ever since has neglected and *refused*, so to do. Upon this state of the pleadings the court in its opinion says:

"The *refusal* of the defendant to perform. the agreement on his part, when the plaintiff was ready and willing to perform it on his part, superseded the necessity of any further acts towards a performance by the latter, even if, under any circumstances, it would have been necessary to go further and allege a tender or offer by the plaintiff; and therefore that the declaration shows that the plaintiff did all that it was necessary for him to do in order to maintain this action. The *refusal* of the defendant to perform would render such an offer a futile act, which the law did not require."

In the present case, the complaint does not show a *refusal* to perform on the part of Lay, Mallory and Brown; it shows that they failed and neglected to perform, claiming that the $250,000 should be deposited to their credit *before* the delivery or deposit of the deed of conveyance. The pleader alleges that such claim was false. Technically, it was not in accordance with the terms of the agreement; as was said in our original opinion, plaintiffs were bound to pay the $250,000, not *before* the delivery of the deed, but concurrently with such delivery. Nevertheless, such claim or excuse for not delivering the deed was of such a character that it cannot be properly called a refusal on their part to deliver the deed, nor a violation of their contract without an offer to pay or deposit the money on the part of plaintiffs and their associates. In fact, such a claim by its very nature called for payment or deposit of the money, or a *bona fide* offer so to do, on the part of plaintiffs, before they could justly claim that defendants were in default.

Giving the averments of the complaint a fair and reasonable construction, it nowhere appears that Lay and his associates refused absolutely to perform their concurrent agreements. Moreover, the complaint in this action does not allege an unconditional readiness and willingness on the part of plaintiffs and their associates to accept the premises and make payment therefor, according to the terms of the written agreement. The averment is, that Cummins and Olcott and the Iron Mask Mining Company were ready and willing to accept the premises and pay according to the terms, letter and spirit of said agreement, *provided* Lay would produce and deliver smelter returns of ore samples taken from the mine in refutation of certain rumors and charges of corrupt practices alleged against said Lay in respect to the examination of the mine and ore samples taken therefrom; that Lay frequently promised to do this; but had never complied with such promises. These averments were foreign to the terms of the contract. Plaintiffs and their associates undertook to examine and satisfy themselves as to the character and value of the mining property; and the complaint alleges that they did so. By the terms of the agreement Lay did not undertake to produce and deliver smelter returns of the ore, nor in any manner to refute rumors and charges affecting such mining property. His alleged promises to produce and deliver such smelter returns were not in the written agreement, and are not alleged to have been made upon any new consideration.

Notwithstanding the complaint is long and much involved, we have endeavored to give the same careful consideration, and now feel constrained to adhere to our former decision.