## No. 8778.

### STELSON *v.* HAIGLER.

CONTRACTS—*Construed—Sale or Option.* A contract of sale binds the seller to sell, and the purchaser to buy. An option confers the right of purchase without imposing any obligation whatever to complete the purchase.

A contract held to be a mere option, and not an agreement to purchase.

Defendant had employed plaintiff to sell certain real property. Plaintiff produced a broker to whom defendant executed an option to purchase the lands. Thirty thousand dollars was to be paid plaintiff by a day specified, and out of this payment defendant agreed to pay plaintiff $5,000. No payment was ever made by the holder of the option, and no excuse for such non-payment, or failure on the part of defendant to perform the agreement, on his part, was shown. *Held* that plaintiff was not entitled to the $5,000 or any part thereof.

*Error to El Paso District Court, Hon. John E. Little, Judge.*

Mr. R. L. CHAMBERS and Mr. ROBERT KERR, for plaintiff in error.

Messrs. HARRIS & PRICE, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

THE action is by The Haigler Realty Company to recover from Stelson the sum of five thousand dollars, alleged to be due as a real estate broker's commission for the sale of Stelson's ranch. The commission is claimed both under a

written contract, and as the value of the services rendered. The record discloses that Stelson gave the Haigler Realty Company a written agreement, which both agree was intended as a contract of employment to sell the ranch of Stelson.   Later the Haigler Realty Company presented R. F. Kloke, a real estate broker of Omaha, Nebraska, who received from Stelson the following memoranda of agreement, omitting so much thereof as is immaterial in this proceeding:

"The party of the first part sells and agrees to convey to the party of the second part by warranty deed and abstract brought down to date of transfer, the same to show marketable title, the following described lands and water rights:

(Here follows description.)

"The full purchase price for the above described lands and water rights being $131,000.00, one hundred thirty-one thousand dollars, to be paid as follows:

One thousand dollars ($1,000.00) to be placed in escrow with the Exchange National Bank of Colorado Springs, to be turned over to the party of the first part upon the finding of marketable titles by party of the second part.

Thirty thousand dollars ($30,000.00) on or before Dec. 1, 1912.  One hundred thousand dollars ($100,000.00) March 1, 1913, the same to be evidenced by promissory note bearing interest at the rate of 6% per annum, payable semi-annually, to be secured by first mortgage, covering the aforesaid lands and water rights. . *    *    *

Tenth:   That he will execute warranty deed showing marketable titles free and clear of all liens and incumbrances, as above set forth, covering the above described land, conveying the said lands and water rights to the party of the second part, his heirs or assigns, or to anyone whom said party of the second part may direct, upon the payment of the said $30,000.00 and the execution of note and mortgage as above set forth, the same to be paid and executed on or before December 1, 1912.

It is further agreed between the parties hereto that should

there be any defects in the title covering above described lands and water rights, that the party of the second part gives the party of the first part reasonable time through the courts to have such defects set aright.

It is mutually agreed, that the time of payment shall be an essential part of this contract, and in case of failure of the said party of the second part to make either of the payments above mentioned this contract shall be forfeited and determined, at the election of the said party of the first part, and the said party of the second part, shall forfeit all payments made on this contract, as liquidation of all damages to party of the first part.    *    *    *

Colo. Springs, Colo., Sept. 2, 1912.

Received of R. F. Kloke, Omaha, Nebraska, $1,000.00 to apply as part payment on the land mentioned in contract between myself and R. F. Kloke, copy of which is attached hereto.

Should the said R. F. Kloke not find the abstracts covering the lands and water rights marketable as mentioned in the said contract I do hereby agree to return to said R. F. Kloke the $1,000.00 paid to me on this date. The said $1,000.00 being paid to me in lieu of the $1,000.00 which is to be placed in escrow in the Exchange National Bank, Colorado Springs, Colorado, as recited in said contract.

(Signed)    D. C. Stelson."

Haigler testifies that the receipt above set forth was a modification of the preceding agreement. Verdict and judgment was rendered against the plaintiff in error, in the full sum of $5,000.

It is contended by the defendant that the agreement between Stelson and Kloke was a mere option, and not an agreement of sale and purchase. That the option did not ripen into a sale, and therefore the plaintiff did not produce a purchaser ready, able and willing to purchase the lands, and for such reason is not entitled to a commission. The contention of the plaintiff is that this agreement was an absolute contract of purchase and sale.

There were no further payments made by Kloke nor was there any tender of payment. It is true that Kloke testified that he was ready and willing to make the first payment at the time it became due, but if this be true, it was not sufficient, in view of the fact that he did not make the payment, nor offer to do so. He further says that he came to Colorado Springs and saw Haigler, and told him that he was ready to pay, but he did not see Stelson, nor seek to see him, and immediately returned to Omaha.

We said in *Bailey v. Lay,* 18 Colo. 405, 33 Pac. 407:

"The averment that Cummins and Olcott and the Iron Mask Company were ready and willing to accept the premises and make payment, is not equivalent to an averment of payment or of an offer to pay. In case of this kind, when the time for payment has actually arrived, mere readiness and willingness to pay are immaterial—such readiness and willingness without more, will not discharge contract obligations. An averment of readiness and willingness to pay presents nothing tangible or substantial; it involves little more than the state of mind of the party presenting the plea; and the determination of an issue taken thereon would not decide the rights of the parties. On the other hand, an averment of payment or of an offer to pay, is an averment of an overt act—an important and substantial fact; and the determination of an issue taken thereon would, subject to other issues in the case, be decisive of the controversy."

Kloke was a real estate broker, and it is plain from the record that he did not intend to make a purchase of the premises, but rather to secure an option, that he might have opportunity to sell the lands. It is also made clear that Kloke did not come to Colorado Springs on December 2, 1912, for the purpose of making the payment, or any tender of the same. This appears from a night letter telegram from Haigler to Kloke, sent on the evening of November 29th, with but one intervening day before time for payment. This telegram was as follows:

"To R. F. Kloke, Omaha National Bank Bldg., Omaha, Neb.

Letter received. Stelson demands $1,000.00 for extension

of contract for 20 days to apply on purchase price, but according to terms of contract we think if you get abstracts here with your requirements on title by Dec. 2d that it would continue in force until he furnished marketable title therefor. Do not fail to get abstracts here with your requirements by Dec. 2d. Answer."

Kloke appears to have come to Colorado Springs in response to this telegram, bringing the abstracts with him, and returned to Omaha without even advising Stelson of his presence. It is palpable that the purpose was to secure time, and not to make either payment or tender. The plaintiff's agreement specifically recites:

"The title is to be marketable and good and sufficient warranty deed to be executed and delivered by the said D. C. Stelson to the Haigler Realty Company, their heirs or assigns, on or before the 1st day of December, 1912, together with abstract showing marketable title; provided the $1,000.00 is tendered or paid on or before the 3d day of September, 1912, and $30,000.00 is tendered or paid on or before the 1st day of December, 1912. If the said payment as above mentioned is not paid or tendered on or before the dates mentioned above then this contract is to be void and of no effect, and both parties are released from all obligations therein and in that event the said $1 paid on this date is to be held by D. C. Stelson as liquidated damages."

And, "If sale is made as above stated I agree to pay Geo. W. Morse $1,000.00 and The Haigler Realty Co. $5,000.00 out of the $30,000.00 payment above mentioned."

It will be seen from this that the $30,000.00 payment must be either tendered or paid on or before the 1st day of December, 1912, and that such tender or payment was a condition precedent to the execution of the deed and its delivery with the abstracts and that if not so tendered or paid, the agreement was to be void and both parties to stand released therefrom. Again, that the compensation to The Haigler Realty Company, in any event was to be made from the first or $30,000.00 payment.

It is agreed that this sum was not paid nor tendered, nor

any part thereof, as stipulated, nor at all. It is clear therefore that unless such first payment or tender was excused, or made unnecessary by the acts and conduct of Stelson, the plaintiff cannot recover, for this was the result which the Haigler Company agreed to produce in consideration of the commission. But independent of this express provision, it was the duty of Kloke to make the first payment provided in his agreement. It was held in the case of *Bailey v. Law, supra,* that:

"The gravamen of the complaint is, that defendants Lay, Mallory and Brown refused to make and deliver a deed of conveyance of their certain mining property to the Iron Mask Mining and Smelting Company, as by said agreement in writing they had contracted to do. According to the terms of the written agreement the defendants were to deliver the deed to the mining property at the time of the first payment of $250,000.     *     *     *

The agreement in regard to the first payment and the agreement to deliver the deed were to be performed at the same time; they were mutual and dependent agreements; and performance or an offer to perform in respect to first payment was necessary to make it incumbent upon the defendants to deliver the deed. *Englander v. Rogers,* 41 Cal. 420; *Bakeman v. Pooler,* 15 Wend. 637; 2 Parsons on Contracts, 528; Chitty on Contracts (11th ed.), 1082."

The record does not disclose that Stelson at any time refused to comply with this written agreement, but on the contrary and for a long time after December 2, 1912, when the first payment became due, and even up to the commencement of this action, he still offered to make the sale upon the terms stated in the agreement.

Stelson after December 1, 1912, wrote letters both to The Haigler Realty Company, and to Kloke, urging that the matter be closed up, as it was important to prepare for the approaching season's work on the ranch. As late as March, 1913, more than four months after the first payment became due, Kloke wrote Stelson asking for an extension of time, and declared that "the chances are that nothing can be done for some little time in the way of closing it up."

The plaintiff below undertakes to excuse the payment of the $30,000.00 and the completion of the contract by Kloke, upon the ground that the title to the premises was defective, and was not a marketable title. Very soon after or perhaps at the time, of the signing of the Kloke agreement, Stelson turned over the abstracts of title to Haigler, who in turn delivered them to Kloke for examination. These were not returned to Stelson until after December 1, 1912, and after the first payment was due, whereupon Stelson delivered them to H. W. Wing, an attorney of Colorado Springs, with experience in titles and abstracts, together with certain objection of Kloke's attorney, for the purpose of having irregularities in the title corrected so as to meet these objections. The plaintiff below offered the testimony of Wing to support its contention as to defective, or non-marketable title.

Wing testified that he proceeded at once to, and did, have the defects remedied. He says that the objections were by Ramsey, the Omaha attorney of Kloke, and were about one hundred and fifty in number; that in great part they dated back from forty to fifty years, and were technical in character, many being matters of identification where names appeared by initials and with the full Christian name. That there were some apparent defects in case of tax titles, some of which he proceeded to have cleared through court action. That there were no legal or valid defects in the titles, or any of them; that Stelson and his grantors had been in open and actual ownership and possession of the premises for about twenty-six years, to his personal knowledge. That he caused all the objections to be satisfied, and that in his opinion the title to the premises, and to all water rights connected therewith was a marketable title at the time the abstracts were placed in his hands.

It appears from this testimony that about three months were required to clear up all of the irregularities complained of. It does not appear that Kloke made any objection to the abstracts thereafter, though he asked for an extension of time to make the payment.

No other testimony was offered concerning the question of title, and there is no testimony in the case which tends to show any valid defect therein, to any of the lands or water rights involved. The irregularities complained of were not suggested to Stelson until after the date when the first payment was to be made, and these appear to have been cured with all reasonable diligence.

It was expressly agreed in the contract given to Kloke that: "It is further agreed between the parties hereto that should there be any defects in the titles covering above described lands and water rights that the party of the second part gives the party of the first part reasonable time through the courts to have such defects set aright."

Under the facts thus disclosed, and in view of this express agreement, there was no sufficient justification for Kloke to refuse or neglect to make the tender or payment as provided in the agreement, because of defective title. Indeed, he made no such objection until after the expiration of the time for payment.

Neither Kloke nor Stelson claim any rights under the agreement as between themselves. But under all settled rules of construction, the agreement between Stelson and Kloke was an option to purchase, and not a contract of sale. No where in the agreement does Kloke agree to purchase, nor to make any payment, or to bind himself in any other respect, aside from the forfeiture of the amount paid at the time the contract was made. Both Stelson and Kloke treated and construed the agreement as an option at the time, and at all times since. In letters of both, each refers to and speaks of the agreement as an option, and Kloke in his deposition testified as follows:

"Q. But was it a sale, or was it an option, from your point of view? A. I consider it a contract to purchase and with a forfeiture clause, without any liability in case I did not come across or he did not come across."

Again he says: "Of course I will admit as purchaser, that I took this precaution, that in case any unforseen accident should happen I was not bound, but he was. I did

not have to comply with my part of the contract if I did not want to, and he did." And he further testified: "My understanding so far as I was concerned, was that in case I did not want to take the property, did not want to fulfill my contract, naturally I would have to lose what I put up. So that upon the face of the agreement it was uniliteral in character, and fully intended by the parties as an option only.

It may be laid down as an established rule of law that unless the contract contains language which may reasonably be construed as an agreement on the part of the vendee to purchase the property, or to assume some obligation thereunder, it will be an option contract and not an agreement of sale and purchase. It is impossible to conceive of an agreement of sale and purchase without obligation on the part of the vendee to purchase. On the other hand, the absence of such obligation is the distinctive characteristic of an option contract. A contract of sale creates mutual obligations on the part of the seller to sell, and on the part of the purchaser to buy, while an option gives the right to purchase, within a limited time, without imposing any obligations to purchase. James on Option Contracts, § 105, and authorities cited. *Hessel v. Neal,* 25 Colo. App. 300, 137 Pac. 72.

An agent employed to sell or find a purchaser has not performed the contract by negotiating a mere option contract and therefore is not entitled to recover the agreed or any compensation for such services. *Fox v. Denargo Land* Co., 37 Colo. 203; *Brown v. Keegan,* 32 Colo. 463. See also James on Option Contracts, § 205, and authorities cited. We must hold therefore that under the facts and circumstances of this case the Haigler Realty Company not entitled to recover.

The questions here considered were properly raised by demurrer, by instructions tendered and refused, and by instructions given and objected to. There are other assignments of error which we do not deem important to consider.

The judgment is reversed.

White, C. J. and Garrigues, J. concur.