WALTER A. GIBBS, defendant below, plaintiff in error, *v.* HENRY A. PIPER, plaintiff below, defendant in error.

*(February 27, 1930.)*

Wolcott, Chancellor, Pennewill, C. J., Rice, Richards and Rodney, J. J., sitting.

*Clarence A. Southerland, James H. Hughes, Jr.,* and *P. Warren Green* for defendant below, plaintiff in error.

*James I. Boyce* for plaintiff below, defendant in error.

Supreme Court, No. 3, June Term, 1929.

RICE, J., delivering the opinion of the court:

Of the assignments of error filed, seven were abandoned and number eight, in our opinion, is the only one that need be considered by this court. This assignment is based on the language of the court as quoted and it is the contention of the plaintiff in error that the court construed the agreement of May 28, 1925, to be a contract of purchase and sale, when in fact it was merely an option to purchase.

The question is, whether the agreement of May 28, 1925, created a contract binding Piper to sell, and Gibbs to purchase, Piper's interest in the partnership, or merely created an option binding Piper to sell his interest to Gibbs, when he (Piper) should sever his connection with the partnership, if Gibbs then desired to purchase Piper's interest.

There is nothing in the record bearing upon the question of sale and purchase other than the contract and letter set forth in our statement of facts. A substantial part of the testimony introduced into evidence on both sides had to do with the value of Piper's interest at the time he withdrew from the firm.

It is the opinion of this court that the agreement created an option only and in the absence of evidence to prove that Gibbs had exercised the option, the court below was in error in stating to the jury that their verdict must be in favor of the plaintiff for the value of his five per cent. interest in the partnership business.

The written agreement was made upon the solicitation of Piper, who, evidently, had become impatient at the delay in having the business incorporated and he very properly was desirous of having something in writing as evidence of his interest in the business. The primary and main object of the contract seems to be as expressed in the contract:

"In order to evidence Mr. Piper's interest in case anything should happen before incorporating that might leave him without evidence of the understanding, * * *" etc.

As Gibbs was to transfer a portion of his interest in the business to Piper, it was natural that he should desire the opportunity of getting it back if Piper should at some time cease to work for the firm; therefore, it was at the same time provided "that in case he severed his connection with the enterprise he is to surrender his interest to Mr. W. A. Gibbs, at whatever it is worth at the time of such occurrence."

It is believed it will not be questioned that under the terms of the contract, there was an express agreement on the part of Piper, if he should cease to work for W. A. Gibbs and Son, to sell or surrender his interest in the business to W. A. Gibbs. But there does not appear to be any corresponding express obligation to purchase on the part of Gibbs; he could purchase it if he desired, or he could decline to purchase; under the contract he was free to do either.

While in the agreement there may be no express obligation on the part of Gibbs to purchase, yet it is argued that by the use of the word "surrender," and from the fact that both parties signed the agreement, there was an implied obligation on the part of Gibbs to purchase. However, we believe this not to be the case. The word "surrender" in the contract was used to express the same meaning as if the word "sell" had been used. This must be true as the case of the plaintiff below was based on the alleged sale, under the terms of the contract, of Piper's interest in the business to Gibbs. Neither can the intention of the parties to enter into a contract of purchase and sale be inferred from the fact alone that both of the parties signed the contract in question. The very contents of the written paper would indicate that Gibbs should sign it, as he was furnishing Piper with the evidence that a part of his interest had been transferred to Piper. It was also necessary for Piper to sign as he intended to obligate himself to transfer his interest in the business to Gibbs in some way.

From an examination of this contract, one is compelled to the conclusion that there was no express agreement by Gibbs to purchase Piper's interest at any time and under all circumstances. Neither can one reasonably infer from the language of the contract

considered in connection with the facts and circumstances surrounding its execution as disclosed by the record, that there was an implied obligation on the part of Gibbs to purchase.

The effect of the contract in this respect clearly appears to be that Piper parted with his right to sell his interest in the business except to Gibbs if, and when, he should cease to work for the firm and for a reasonable time after such a happening, but that Gibbs did not agree to purchase under all circumstances upon such a happening; he had the right to buy, or the privilege to elect to buy, and until he should affirmatively exercise his right or privilege, and not until then, could it be binding on him as a contract to purchase. This contract seems to come squarely within the four corners of any definition or description of an "option" contract to purchase which has come to our attention. Such contracts have been defined as:

> "An option is a continuing offer or contract by which the owner stipulates with another that the latter shall have the right to buy the property at a fixed price within a certain time, and unless the option is founded on a consideration, or is under seal, it may be withdrawn at any time before acceptance. Such an offer imposes no obligation upon the offerer unless within the time expressly or impliedly limited it is accepted." 35 *Cyc., p.* 56.

Also:

> "An agreement is only an option where no obligation rests on the second party to make any payment except such as may be agreed upon between the parties as a consideration to support such option until he has made up his mind within the time specified to complete the purchase." 3 *A. L. R.* 582.

And again:

> "The obligation by which one binds himself to sell, and leaves it discretionary with the other party to buy." *Black v. Maddox,* 104 *Ga.* 157, 30 *S. E.* 723, 724.

A few applications of the definitions may be found in the following citations, found in the brief of counsel for the plaintiff in error: *Alderman v. New Departure Bell Co.,* 75 *Conn.* 519, 54 *A.* 198; *Winkelmeyer Brew. Ass'n v. Nipp,* 6 *Kan. App.* 730, 50 *P.* 956; *Stelson v. Haigler,* 63 *Colo.* 200, 165 *P.* 265, 268, 3 *A. L. R.* 550, and a very full case note in *volume* 3, *A. L. R., p.* 576.

In *Stelson v. Haigler, supra,* the court said:

> "It may be laid down as an established rule of law that, unless the contract contains language which may reasonably be construed as an agreement

on the part of the vendee to purchase the property, or to assume some obligation thereunder, it will be an option contract and not an agreement of sale and purchase. It is impossible to conceive of an agreement of sale and purchase without obligation on the part of the vendee to purchase. On the other hand, the absence of such obligation is the distinctive characteristic of an option contract. A contract of sale creates mutual obligations on the part of the seller to sell, and on the part of the purchaser to buy, while an option gives the right to purchase, within a limited time, without imposing any obligations to purchase."

Counsel for the defendant in error argues that it is immaterial whether the agreement of May 28, 1925, was, or was not an option since Gibbs in the letter of September 14, 1927, recognized that he was bound to take up the interest, and also for the reason that Piper's interest was surrendered by him and accepted by Gibbs, and also that the surrender of Piper's interest was not questioned in the court below.

■■ Our understanding of the meaning of the letter of September 14 is not in accord with the meaning attributed to it by counsel for the defendant in error. In the letter Gibbs only affirmed the understanding concerning the purchase of Piper's interest and then he expressly stated "There can be nothing definite at this time." Certainly the language of this letter cannot be construed as a recognition by Gibbs of an unqualified obligation on his part to purchase Piper's interest, neither can it be construed to be an exercise of the option to purchase, but, to the contrary it must be regarded as a refusal to exercise the option at that immediate time, without any definite assurance that it would be exercised in the future.

As to the contention that Piper's interest was surrendered by Piper and accepted by Gibbs, there is only this to be said: Counsel for the defendant above has not directed our attention to any evidence in the record to prove such contention and the court has not been able to find any evidence which proves, or tends to prove, surrender by Piper or acceptance by Gibbs. The record is silent on this subject.

It is contended on behalf of the defendant in error that the surrender of Piper's interest to Gibbs was not questioned at the trial in the court below and counsel argued that this in effect was an acceptance by Gibbs of Piper's interest. It is true that at the trial the surrender and acceptance of Piper's interest was not questioned,

and it was probably this failure which caused the court, without opportunity to examine the record which had not then been transcribed, to assume that there had been some evidence introduced to prove acceptance of Piper's interest by Gibbs, which if true would have created a contract of purchase and sale between the parties with payment on the part of the purchaser as the only thing remaining to be done. Under such circumstances, the language of the court below might have been proper. We do not believe that the acceptance by Gibbs of Piper's interest can be assumed from the mere fact that the defendant below did not question the surrender by Piper of his interest. The surrender of Piper's interest was a matter of no importance in the case unless it were connected with some act or agreement on the part of Gibbs such as would create an obligation on his part to accept and pay for the same.

As it has been determined that the agreement of May 28 was an option contract and not a contract of purchase and sale, and that there had not been an express or implied exercise of the option by Gibbs, it was exceptionable error for the trial court, in the charge to the jury, to state that:

"The execution of the contract having been admitted, its construction is for the Court, and your verdict must be for the plaintiff for the value of his five per cent. interest in the Gibbs and Son partnership business, with interest from September 12, 1927, subject, however, to the admitted credit of $1,164.00 on December 4, 1926."

For the reasons stated, the judgment of the court below is reversed, and the record is remanded for such further proceedings in that court as may be in conformity with this opinion.