No. 18,949.

MAXINE QUILLER GRAY *v.* EARL H. QUILLER, ET AL.

(355 P. [2d] 99)

Decided August 29, 1960.

Mr. LEROY J. WILLIAMS, for plaintiff in error.

Mr. MARTIN ZEROBNICK, Mr. L. L. NATHENSON, for defendant in error Earl H. Quiller.

Mr. GEORGE GAUBATZ, for defendant in error George Ramstetter.

*In Department.*

PER CURIAM.

THE parties appear here in the same order that they appeared in the trial court and we will so refer to them.

Plaintiff brought the action seeking part of the purchase price of the sale of certain realty. At the conclusion of plaintiff's case the trial court dismissed the complaint as not stating a claim upon which relief could be granted and plaintiff is here by writ of error seeking reversal.

It appears that defendant Earl H. Quiller and his sister Mabel Q. Hunt owned as tenants in common two parcels of land located in Central City, Gilpin county, described as follows:

(1) Lot 12, Block 4, Central City (known as the "Granite House"); and

(2) Lots 1, 2 and 3, Block 6, Central City (known as the "Parking Lot").

On June 1, 1955, they entered into a lease and option with defendant George Ramstetter for a term ending May 31, 1958. Ramstetter was given "the right to purchase all of the demised premises until the termination or expiration of this lease, for the sum of fifteen thousand dollars ($15,000.00)."

Mabel Q. Hunt died July 11, 1957, and by will devised her one-half of the Granite House to Quiller, thereby making Quiller sole owner of that property, and devised her interest in Lots 1, 2 and 3 in Block 6 to plaintiff, thereby making plaintiff Gray and defendant Quiller owners as tenants in common of the "parking lot."

It appears that a third party was interested in purchasing both parcels and Ramstetter was given an opportunity to meet his offer. In any event Ramstetter was

not interested in purchasing the property at the option price of $15,000.00, and testified that he did not intend to exercise his option. However, during May 1958 he entered into negotiations to buy Quiller's interest in both parcels and on June 2, 1958, consummated the purchase for $10,000.00.

█ Plaintiff contends that the lease and option bound the parties to a selling price of $15,000.00 and no other price, and that defendant Quiller was prohibited by said lease and option from selling his interest therein. The option, of course, bound Quiller to sell at the option price of $15,000.00 if Ramstetter elected to exercise his right thereunder, but it did not bind Ramstetter to purchase.

"A contract of sale creates mutual obligations on the part of the seller to sell, and on the part of the purchaser to buy, while an option gives the right to purchase, within a limited time, without imposing any obligations to purchase." *Stelson v. Haigler,* 63 Colo. 200, 165 Pac. 265.

█ The general rule is that all property is freely alienable and a co-tenant can deal with strangers as he will, in so far as his own undivided moiety is concerned. 14 Am. Jur. 131. Quiller at the time of the sale to Ramstetter owned the entire fee interest in and to the Granite House and an undivided one-half interest in the Parking Lot. These interests he sold to Ramstetter. He could have sold to anybody he chose, Ramstetter having declined to exercise his option.

That Quiller sold nothing more than his own property is undisputed, and plaintiff admits that he sold nothing of hers. She therefore has nothing about which to complain and was not damaged.

The judgment is affirmed.

Mr. Justice Moore, Mr. Justice Hall and Mr. Justice Day concur.