THE MONTRAY REALTY COMPANY, a corporation under the laws of the State of New York, plaintiff below, plaintiff in error, *vs.* JOHN W. ARTHURS, defendant below, defendant in error.

VENDOR AND PURCHASER—CONTRACT OF SALE—OFFER TO PURCHASE.
An application for the purchase of certain real estate was merely a revocable offer, and not a completed contract of sale, although money had been paid "on account," notes executed for the remainder of the purchase price, and although a sales agent of the vendor had signed the application.

(*September* 13, 1918.)

CURTIS, Chancellor, PENNEWILL, Chief Justice, and RICE and HEISEL, Associate Judges, sitting.
*Levin Irving Handy* and *Harry Emmons* for plaintiff in error.
*Robert H. Richards* for defendant in error.
Supreme Court, June Term, 1918.

ERROR No. 11, January Term, 1918. S. c. trial below, 6 *Boyce* 361, 100 *Atl.* 325.

Action by the Montray Realty Company against John W. Arthurs on two promissory notes. Judgment for defendant. Plaintiff brings error. Judgment affirmed.

The Montray Realty Company, the plaintiff in error, was a New York corporation engaged in selling real estate, in the form of lots, *inter alia*, at a place called Westbury, on Long Island state of New York. In the summer of 1915, one Samuel E. Underhill was employed by said company as a salesman to solicit purchasers for said lots. His authority as a salesman and agent of the company was in writing but was not produced at the trial and the character and extent of his written authority was not disclosed. He had special verbal authority to transact the business with John W. Arthurs, the defendant in error, and to sign the paper writing which was also signed by Arthurs, set forth in the opinion of the court below. Underhill received a telegram from the president of the company before and on the

same day the paper writing was signed by him and Arthurs, assuring him (Underhill) that the lots referred to in said paper were then unsold.

John W. Arthurs, defendant in error, was a business man residing at Kenton, Kent county, Delaware.

Prior to August 2, 1915, Underhill paid two visits to Arthurs for the purpose of selling lots to him in Westbury, Long Island. Finally on August second, after the verbal negotiations which occurred during the two prior visits and on the last mentioned date, the transaction between the plaintiff, through its agent Underhill, and the defendant was closed by the execution of the said paper by the delivery therewith to Underhill by the defendant of a check and two notes also set forth in the opinion of the court below. The said paper writing was intended to be executed in duplicate, and the copy thereof kept by the defendant There is no difference between these two papers except some very slight differences which are immaterial.

These intended to be duplicate papers were executed upon printed forms and no part of the same is written except a part of the date, the identification of the lots, the amount of money to be paid and the method of payment, the signatures "J. W. Arthurs" and "S. E. Underhill," and, in figures, the amount of money "$200.00," which underhill acknowledges to have received on account, the defenant's occupation and his address. Everything else is printed in the form used.

These papers were signed by the defendant and Underhill about noon of the second of August and about half past seven o'clock in the evening of the same day the defendant telegraphed from Kenton, Delaware, to the Montray Realty Company, at its office address in New York City, saying "Cancel application given Underhill to-day for two and one-half lots."

The plaintiff acknowledged this telegram by letter, dated August fourth and signed by its president, stating that Mr. Underhill had been asked to call to see the defendant "for the purpose of securing a more complete understanding."

August ninth, the defendant wrote plaintiff confirming the telegram of the second and demanding the return of his check and note, evidently overlooking one of the two notes given.

August tenth, plaintiff wrote defendant saying:

"We have your order for two and one-half lots in Westbury, Long Island," etc. "We acknowledge receipt of $100.00 on account of your two notes," etc. "We will execute a deed to the Westbury property and same will be held for you in trust, and we guarantee its prompt delivery to you on completion of your payments," etc.

There were some other letters which passed between the parties but they are immaterial.

All the rest of the evidence shown by the record relates to the defense of fraud which was also made by the defendant, but it has no connection with the question raised.

At the trial the defendant prayed for binding instructions to the jury on the ground that the said paper writing was not a completed contract but merely an offer from the defendant to the plaintiff to purchase certain lots and that the said offer was withdrawn or revoked before acceptance by the plaintiff and notification of such acceptance to the defendant.

The assignment of error relied on was that the court erred in instructing the jury to render a verdict for the defendant, though the admission of the telegram against objection was also assigned as error.

The proof in respect to the telegram was that W., the station agent and telegraph operator at Kenton, Delaware, received it at 7:25 in the evening from Mr. Arthurs, the defendant below, on the second day of August, 1915, and sent it through the usual channels of the Postal Telegraph Company at 7:30 the same evening to the plaintiff below at 200 Fifth avenue, New York City.

It was contended that it was necessary to show that the Postal Telegraph Company delivered the telegram to the plaintiff company before admitting it in evidence.

### Argument for Plaintiff in Error.

The court below was in error in holding that no contract had arisen between the parties to this action and that the de-

Arguments.

fendant was at liberty to cancel or withdraw his application at the time he undertook to do so and, accordingly, in instructing the jury to render a verdict for the defendant.

The only fair and reasonable conclusion to be drawn from the acts and statements of the parties to this transaction is that at the time the papers were signed, the contract between the two parties became absolute and effective.

The execution of the contract on the part of the Montray Realty Company by its representative, S. E. Underhill, and the receipt by him of the check and notes representing the entire purchase money, were in themselves an acceptance of the offer made by Mr. Arthurs and made unnecessary any further acceptance of the same by the plaintiff company.

It is demonstrated by the record that Mr. Arthurs understood he had entered into a binding contract with the Montray Realty Company for the purchase of the lots, and had agreed to pay for the same one thousand eight hundred and seventy-five dollars.

Mr. Arthurs, not only in his letter, but repeatedly in his testimony, spoke of the paper in evidence and the arrangement with Underhill, as a contract.

It is true that the paper which Mr. Arthurs signed was an application and that he signed it as an applicant. But it is also true that said paper was immediately signed by the Montray Realty Company by the hand of its duly authorized representative, S. E. Underhill, and the signature of the said Montray Realty Company acknowledged the receipt "on account" of two hundred dollars. Manifestly, the words "on account" meant something and must be given a reasonable meaning. Our contention is that they mean and could mean but one thing, namely, that the two hundred dollars was received on account of a partial payment of the full purchase price. If that is the meaning the receipt amounts to a full and formal acceptance of the application and makes a binding contract.

Mr. Arthurs, after signing the application and receiving the acceptance thereof, proceeded to give two notes, the basis of this action, in full settlement of the contract.

In the absence of an express grant of power or of an implication of the possession of power from custom, holding out, or habit of acting, judicial theory has ascribed to the president of various kinds of corporations, when acting as general manager of the corporation, the power to do anything in the ordinary transaction of its business in behalf of corporation so as to bind it.   10 *Cyc.* 910; *Powers v. Schlict Heat, Light & Power Co.*, 23 *App. Div.* 380, 48 *N. Y. Supp.* 237, affirmed by 165 *N. Y.* 662, 59 *N. E.* 1129; *Senour Mfg. Co. v. Clarke*, 96 *Wis.* 469, 71 *N. W.* 883; *Ceeder v. H. M. Loud Lumber Co.*, 86 *Mich.* 541, 49 *N. W.* 575, 24 *Am. St. Rep.* 134; *Kraft v. Grubbs*, 116 *Ark.* 520, 174 *S. W.* 245; *Hoffman v. Rush Co.*, 27 *Cal. App.* 167, 149 *Pl* 177; *Meating v. Tigerton Lumber Co.*, 113 *Wis.* 379, 89 *N. W.* 152; *Davidson v. Cannabis Mfg. Co.*, 113 *App. Div.* 664, 99 *N. Y. Supp.* 1018; *White v. Elgin Est. Co.*, 108 *Iowa*, 522, 79 *N. W.* 283; *Wales-Riggs Plantation v. Caston*, 105 *Ark.* 641, 152 *S. W.* 282; *Tervis v. Hammersmith*, 81 *N. E.* 614, 84 *N. E.* 337, 170 *Ind.* 286; *Madley Mfg. Co. v. International Co.*, 6 *Ala. App.* 219, 60 *South.* 557; *Gilmore v. Samuels*, 135 *Ky.* 706, 123 *S. W.* 271, 21 *Ann. Cas.* 611; *Vincent v. Alexander, etc., Co.*, 85 *Conn.* 512, 84 *Atl.* 84.

A telegram from the president of a corporation authorizing an agent to contract is sufficient authority.   *Felton v. McClave*, 46 *N. Y. Super. Ct.* 53.

When an agent's authority is verbal, he may himself testify as to its extent.   *Spears v. Black*, 190 *Mich.* 693, 157 *N. W.* 382; *Roberts & Son v. Williams (Ala.)* 73 *South* .502; *Concordia Fire Ins. Co. v. Mitchell*, 122 *Ark.* 357, 183 *S. W.* 770.

The statute of frauds does not require that the authority of an agent to contract for the sale of real estate, and to sign such contract as agent for the vendor, shall be in writing, but he must have explicit and direct verbal authority, at least, from the vendor to sign the contract.   *Edwards v. Johnson*, 3 *Houst.* 435.

The assent of the acceptor may be evidenced by his signature attached to the offer, and such signature raises the presumption of acceptance, no other object being apparent.   *Taylor v.*

*Bannerman,* 120 *Wis.* 189, 97 *N. W.* 918; *Groetzinger v. Wyman,* 105 *Iowa,* 574, 75 *N. W.* 512; *Hoppel v. Rosenthal (Sup.)* 103 *N. Y. Supp.* 715.

The acceptance of a contract may be implied from the acts and conduct of the party to whom the offer is made. *Stannard v. Reid & Co.,* 118 *App. Div.* 304, 103 *N. Y. Supp.* 521; *Finch v. Mansfield,* 97 *Mass.* 89; *Pitts Sheet Mfg. Co. v. West Penn Steel Co.,* 197 *Pa.* 491, 47 *Atl.* 838.

Performance of the conditions of a contract or the acceptance of the consideration offered therewith is an acceptance. *Gallagher v. Equitable Gas Co.,* 141 *Cal.* 699, 75 *Pac.* 329.

Argument for Defendant in Error.

The sole question involved is whether the said paper writing, under the circumstances of the case, was anything more than a mere offer by the defendant to the plaintiff to buy certain lots of land.

The said writing is, as a matter of law, the crystallization of all prior negotiations between the plaintiff and the defendant. The writing when signed determined the character of the transaction which was completed by its execution.

A reading of the writing in question can leave no room for doubt as to its character. In the first place it is headed and referred to as an "application." It starts out with the words, "I hereby make application for two and one-half lots," etc., thereafter describing them in the remainder of the first paragraph. The second paragraph contains certain guaranties as to the character of the title, freedom from encumberance and the general character of the ground of these lots for which application is made. The third, fourth, fifth, sixth, seventh and eighth paragraphs contain certain provisions which, upon the acceptance of the application by the plaintiff, shall constitute the terms of the purchase and sale of the lots for which the application is made. It is provided in the sixth paragraph that "the Montray Realty Company will confirm number of lots" designated in the first paragraph and for which the application is made. The ninth, or last, paragraph says.:

"It is understood and agreed that after acceptance by the Montray Realty Company, this contract cannot be canceled, and that its validity shall not be affected by any verbal or other agreements not contained herein."

The paper is signed by the defendant over the printed word "Applicant," and the defendant is therefore, by the printed form furnished by the plaintiff itself, made to describe himself as no more than an applicant, or offeror. The writing is also signed under the words, "Received on account, $200.00," with the name "S. E. Underhill," over the words "Representative. The Montray Realty Company, 200 Fifth Avenue, New York."

It clearly appears therefore from the writing itself that by the title which the plaintiff gave it, it is no more than an "application" or offer. It also appears from the language in the beginning which indicates the character and quality of the act done by the defendant in signing it that such act is the making of an application or offer, "I hereby make application." It also clearly shows that the Montray Realty Company is thereafter expected to do at least two things before a completed contract of purchase and sale is consummated, between the plaintiff and the defendant, to wit, first, to "confirm the number of lots" for which the defendant's application is thereby made, that is to say, to assure the defendant that he can get the lots applied for, and secondly, the last paragraph makes it clear that the application must be accepted by "the Montray Realty Company" before a binding contract is created by the parties, and, by clear implication, before such acceptance the application may be canceled or withdrawn at any time. It is obvious that the plaintiff intended the form which was signed by the defendant to be used only in making an offer or application because just below the line upon which the defendant was expected to sign, and did sign, is printed the word "Applicant," as descriptive of the capacity in which it was intended that the defendant should sign. The place for the signing of the agent of the plaintiff, according to the plan of the printed form used, is directly under the printed words, "Received on account." From which it is evident that the signing of the agent of the plaintiff was intended to be no more than the acknowledgment of receipt of the initial payment, made or tendered

by the applicant upon the making of his application. This is the place where Underhill, the agent of the plaintiff, did sign, and, in so signing, he was made, by the printed language of the form, nothing more than a "representative" of the plaintiff. It is also clear from the last paragraph of the writing that the writing itself is expressly made to contain the whole of the transaction between the parties as it existed at the time of signing the writing because it expressly provides that the validity of the writing "shall not be affected by any verbal or other agreements not contained herein."

It is obvious that when the defendant had signed the paper writing, he had simply made an offer, or "application," to the plaintiff and tendered therewith a check and two notes in payment of the price which he offered for the lots, according to the terms of the offer, which offer must be accepted by the Montray Realty Company in order to make a binding contract between the parties. If the offer should be withdrawn before acceptance, or acceptance should be refused, it is clear that the offeree could have no title to the check or the notes and would be bound to return the same to the offeror. If it failed to return the notes, it could not maintain a suit upon them because of the infirmity in its title to them.

The plaintiff has quoted extensively from the oral testimony for the purpose of showing that the defendant throughout his testimony repeatedly referred to the writing in question as a "contract." In fact, as the quoted testimony of the defendant shows, in every instance but two in which the word "contract" is used in referring to the writing, it is used by counsel for the plaintiff in questions put to the defendant, so that the language is the counsel's language and not the defendant's. The defendant only uses the word "contract" when referring to the writing twice. This, however, is wholly immaterial. The writing itself, in the last parapraph, refers to itself as a "contract." The character of the writing must be determined from its contents and legal effect.

The plaintiff has also quoted at length from the oral testimony for the purpose of showing that Underhill had some kind of

a special verbal authority from the president of the plaintiff to execute a final contract for the sale of this real estate to the defendant and that when the writing in question was signed he did execute such a contract.

In the first place, the writing itself negatives this contention. In the second place, the extent of Underhill's written authority was not discolsed and he could not be given any verbal authority to execute a valid contract for the sale of real estate by the plaintiff to the defendant, for the reason that under the statute of frauds of this state an agent cannot execute a written contract for the sale of real estate unless his authority to execute the same be in writing.

The plaintiff has fallen into error when it states that the statute of frauds of this state does not require that the authority of an agent to contract for the sale of real estate, and to sign such a contract as agent for the vendor "shall be in writing." The case of *Edwards v. Johnson*, 3 *Houston*, 435, relied on as sustaining the proposition, was decided in 1867 and was then correctly decided in accordance with the plain language of our then statute of frauds, but the Legislature, at its very next session (13 *Del. Laws, c.* 451), amended our statute of frauds by expressly requiring the authority of the agent to be "in writing."

It is universally decided that where authority to make a binding contract can be conferred only by writing parol authority is not adequate. 1 *Mechem on Agency* (2d Ed.) § 798, and cases cited; also *sections* 221, 222, 223, and 229; *Walker's Law of Real Estate Agency*, § 602; *Young v. Ruhwedel*, 119 *Mo. App.* 231, 96 *S. W.* 228.

If, therefore, the writing in question were a contract for the sale of the land from the plaintiff to the defendant, it would be absolutely void, under our statute of frauds.

That the writing in question was no more than an offer not only appears from the document itself but consideration of the document in the light of adjudicated cases makes it certain that no other character can properly be ascribed to it. *McCully's Adm'r v. Insurance Co.*, 18 *W. Va.* 782; *Owens Co. v. Bemis*, 22 *N. D.* 159, 133 *N. W.* 59, 37 *L. R. A.* (*N. S.*) 232; *Baird v. Pratt,*

148 *Fed.* 825, 78 *C. C. A.* 515, 10 *L. R. A.* (*N. S.*) 1116; *Bauman v. McManus*, 75 *Kan.* 106, 89 *Pac.* 15, 10 *L. R. A.* (*N. S.*) 1138; *Becker Co. v. Alvey* (*Ky.*) 86 *S. W.* 974; *Durkee v. Schultz*, 122 *Iowa*, 410, 98 *N. W.* 149; *Atlanta Buggy Co. v. Hess Springs & Axle Co.*, 124 *Ga.* 338, 52 *S. E.* 613, 4 *L. R. A.* (*N. S.*) 431; *Challenge Wind & Feed Mill Co. v. Kerr*, 93 *Mich.* 328, 53 *N. W.* 555; *National Savings Bank Association, Law Rep.* 4 *Eq. Cases*, 9; *White v. Corlies*, 46 *N. Y.* 467.

This law has been settled so long ago as the time of *Edward IV*, for in the *Year Book of 17 Edward IV*, we find Chief Justice Brian saying, in a case, then before him:

"Your plea is utterly naught for it does not show that when you had made up your mind to take them you signified it to the plaintiff, and your having it in your mind is nothing, for it is trite law that the thought of man in not triable, for even the Devil does not know what the thought of man is; but I grant you this that if in his offer to you he had said, Go look at them, and if you are pleased with them, signify it to such and such a man, and if you had signified it to such and such a man, your plea would have been good."

It is fundamental law that an offer may be revoked at any time before acceptance. *Anson on Contracts* (*2d Am. Ed. of the 11th English Ed.*) *p.* 40; 1 *Elliott on Contracts*, §§ 33, 45; *James on Option Contracts*, § 703.

*Per Curiam:* There was no error in the instruction of the court below to the jury to find a verdict for the defendant. The court below rightly held that the notes sued on were delivered to the payee, the plaintiff, in connection with an offer by the defendant to buy real estate from the plaintiff, which offer was effectively revoked before its acceptance by the seller and notice of the revocation was sent with due promptness to the plaintiff. There was no right of action on the notes unless there was a contract between the parties to it respecting the purchase of land and the offer being seasonably withdrawn there was no contract of sale. This disposes of the main question raised by the assignments of error.

The other assignments of error related to the admission in evidence of a certain telegram from the defendant to the plaintiff until more proof had been made of the receipt thereof by the plaintiff. But its receipt was amply shown by the testimony in the case, so that those assignments of error have no merit.

The judgment of the court below will be affirmed.