904 So.2d 507 (2005)
P & O PORTS FLORIDA, INC., Appellant,
v.
CONTINENTAL STEVEDORING & TERMINALS, INC., Appellee.
No. 3D03-2878.
District Court of Appeal of Florida, Third District.
May 25, 2005.
Holland & Knight and Rodolfo Sorondo, Jr. and Christopher N. Bellows, Miami, for appellant.
*508 Bilzin Sumberg Baena Price & Axelrod and Michael N. Kreitzer, Miami, and Allen J. Smith, for appellee.
Before GREEN, CORTIAS, and ROTHENBERG, JJ.
ROTHENBERG, J.
Defendant, P & O Ports Florida, Inc. (P & O), appeals from a final judgment in favor of plaintiff, Continental Stevedoring & Terminals, Inc. (Continental).
P & O's predecessor, I.T.O. Corporation of Florida, and Continental formed the Eller-I.T.O. Stevedoring Company (Eller-I.T.O.). Stevedoring is the loading and unloading of cargo and baggage to and from ships. The parties operate pursuant to the Eller-I.T.O. Stevedoring Company L.L.C. Amended and Restated Limited Liability Company Agreement (Agreement), which includes a non-compete provision and a buy-sell provision (also known as a put-take provision). The buy-sell provision is found in section 13 of the Agreement. Paragraph 13.2 provides in pertinent part:
Should either Member desire to purchase the other Member's Membership Interest in the Company, then the Member (the "Offering Member") desiring to effect such a purchase shall make a written offer for such acquisition, which offer shall be at such price and upon such terms and conditions as the Offering Member deems appropriate. After the offer is made, the Member receiving the Offer (the "Offeree Member") may either accept the offer or purchase the Offering Shareholder's fifty percent (50%) Membership Interest upon the same terms and conditions as the Offering Member's offer. The Offeree Member shall have thirty (30) days from the date that such offer is communicated within which to either accept the offer or elect to purchase the Offering Member's fifty percent (50%) Membership Interest on the same terms and conditions as the offer.
The non-compete provision is found in paragraph 14.1 of the Agreement, and provides in pertinent part:
Each member agrees that . . . it will not directly or indirectly, engage in or conduct, at the Port of Miami, or any other location within Dade County, Florida, any of the Business activities conducted by the Company . . . such limitation to survive any transfer or other disposition by any member of its Membership Interest but to terminate upon the first to occur of: (a) three (3) years after the purchase of such Membership Interest pursuant to the provisions of section 13 or 16 hereof; or (b) the dissolution of the Company. . . .
On April 9, 2003, P & O made an offer to buy Continental's interest in Eller-I.T.O. for 7.2 million dollars. The offer included the condition that the parties would waive the non-compete provision of the agreement. Continental did not want to sell its share for only 7.2 million dollars, and it did not want to buy P & O's share without the protection of the non-compete provision.
Continental sought a judicial determination that P & O's offer was invalid by filing a complaint seeking declaratory and injunctive relief. The declaratory judgment count asked the court to find that the offer was made in bad faith; that the parties intended that the non-compete provisions of the Agreement survive a transfer of a member's interest and P & O's offer attempted to frustrate that intent; that because P & O's offer was legally unenforceable, Continental had no duty to buy or to sell; and that P & O was in violation of the Agreement because it was competing with Continental. The count for preliminary and permanent injunction sought to prohibit P *509 & O's attempt to exercise the buy-sell option of paragraph 13.2 of the Agreement. The trial court tolled the time for Continental's response for ninety days, and appointed a Special Master to conduct an evidentiary hearing.
The Special Master determined that the portion of the buy-sell provision which provides that an offer can be made "upon such terms and conditions as the Offering Member deems appropriate," was ambiguous, and therefore permitted the parties to present extrinsic evidence regarding their intent when drafting the Agreement.
After the hearing, but before the Special Master issued his report, P & O attempted to revoke its offer by writing to Continental that its buy-sell offer was "hereby rescinded and withdrawn." Continental filed a motion to deem the revocation invalid, but the motion was never ruled upon.
The Special Master found that when entering into the contract, the parties did not intend "condition" to mean the termination of the non-compete provision; and he found that the non-compete provision survives any purchase or sale of a membership interest for three years from the date of the purchase and sale. The Special Master recommended that the trial court declare the offer to be valid; find that the non-compete agreement survives the sale; and that it enter an injunction against the parties prohibiting them from competing with each other at the Port of Miami for three years. The trial court entered a Final Judgment adopting the Special Master's recommendations over P & O's objections. P & O appealed.
Paragraph 13.2 of the Agreement provides that, in making an offer to purchase the other Member's interest in the company, the offer must be in writing and "shall be at such price and upon such terms and conditions as the Offering Member deems appropriate." Paragraph 14.1, however, prohibits Members from competing against each other and provides that such limitation is "to survive any transfer or other disposition by any Member" for a term of three (3) years or upon dissolution of the Company.
We therefore conclude, as did the trial court, that the Agreement is ambiguous because it is not clear from its terms whether the non-compete provision in paragraph 14.1 is a condition which can be modified in an offer pursuant to paragraph 13.2. Thus, the Special Master correctly conducted an evidentiary hearing to determine the parties' intent.
The factual findings of the Special Master, adopted by the trial court, will not be disturbed if supported by "substantial competent evidence." See North Am. Islamic Trust, Inc. v. Muslim Ctr. of Miami, Inc., 771 So.2d 1227 (Fla. 3d DCA 2000); Anderson v. Anderson, 736 So.2d 49 (Fla. 5th DCA 1999); Abreu v. Amaro, 534 So.2d 771 (Fla. 3d DCA 1988); Zerquera v. Centennial Homeowners' Ass'n, Inc., 721 So.2d 751 (Fla. 3d DCA 1998).
Mr. Novacek, the former president of Continental, who personally negotiated the Agreement, testified that the parties never intended by the language of the Agreement that a waiver of the non-competition provision could be one of the conditions of the "put-take." He also testified that the non-compete clause was intended to survive a change in ownership. P & O argued, however, that Continental had used a similar buy-sell provision to remove its former partner, Harrington & Company (Harrington) and its principals from the stevedoring business and to bring in P & O.[1] Continental's offer to Harrington *510 and its principals included a condition in its offer expanding the terms of the non-competition provision. When Harrington objected that an offer containing such a condition was not valid, Continental responded in a letter (written near the time that Continental was negotiating its agreement with P & O) that the offer was valid, and that Harrington's objections ignored "the express and clear terms, as well as the intent, of [the buy-sell provision] that the Offer can contain price and other terms as are `appropriate.'" Continental and Harrington reached a settlement, so there was never a judicial determination of the appropriateness of Continental's offer.
The Special Master determined (and the trial court adopted these findings) that the parties intended that the non-compete provision survive a change in ownership. Thus, an offer could not include a condition waiving the non-compete provision of the Agreement. Although there was evidence to support a contrary conclusion, as there is substantial competent evidence to support the trial court's conclusions, we will not disturb the trial court's findings on appeal. See Stevens v. Cricket Club Condominium, Inc., 784 So.2d 517, 518-19 (Fla. 3d DCA 2001)(finding that an appellate court's function is not to reweigh the evidence, but to determine if the record contains competent substantial evidence to support the conclusions of the trier of fact, and that the trial court's findings are presumed correct); Raulerson v. Metzger, 375 So.2d 576 (Fla. 5th DCA 1979)(if there exists any substantial competent evidence on the record, the findings of fact must stand and the judgment entered thereon must be affirmed).
We find, however, that once the trial court concluded that the parties could not change the provisions in the non-compete clause as a condition of the offer, it was error to strike the improper condition and to allow Continental to accept the judicially altered offer. We conclude that Continental was not free to accept the offer as modified by the court and P & O was not legally bound by its offer which had been materially altered by the court. See Friel v. Jones, 206 A.2d 232 (Del.Ch.1964)(an acceptance of an offer, in order to be effectual, must be identical with the offer); Grasso v. First USA Bank, 713 A.2d 304, 308 (Del.Super.1998)(to be effective, the acceptance must be identical to the offer). Once the court changed the terms, there was no offer, as P & O clearly did not intend to make the monetary offer without the elimination of the non-compete provision. See Zalis v. M.E.J. Rich Corp., 797 So.2d 1289 (Fla. 4th DCA 2001)(if the condition is invalid, it follows that the whole offer is invalid as well).
In the concurring opinion it is argued that this cause should be dismissed because P & O revoked its offer prior to acceptance by Continental, thereby precluding further review by this court. Respectfully, we decline to reach our decision based upon this argument, as P & O did not pursue resolution of this action below, nor in this appeal, based upon this theory.
Continental filed a Verified Emergency Motion for Preliminary Injunctive Relief seeking to preclude P & O from enforcing its proposed offer under the buy-sell provision of the agreement. It is this action which initiated the involvement of the trial court, and this court on appeal. Continental's Motion sought a ruling by the trial *511 court, to declare the offer by P & O void ab initio and therefore unenforceable, and requested that the court toll its time to respond to the offer, pending judicial determination of the legal effect of P & O's offer, a request which was granted. Paragraph 13.2 of the Agreement provides that the offeree must either accept the offer and sell its shares of the business based upon the terms of the offer, or agree to purchase the business on the same terms, within thirty (30) days of the offer. The trial court expanded the thirty (30) day time limit by entering an order tolling the time to respond, for ninety (90) days. It is during this period of time in which P & O sent its "Notice of Revocation" to Continental.
Neither party attempted to obtain a ruling on the legal effect of P & O's "Notice of Revocation." P & O did not attempt to halt further proceedings, and although Continental, who was seeking injunctive relief releasing it from the offer by P & O, filed a motion to deem the revocation invalid, it did not attempt to obtain a ruling on its motion.
Instead, Continental, in anticipation of a favorable ruling by the Special Master, sat moot and waited for the Special Master's Report. Upon a favorable finding, Continental again sat moot and obtained an equally favorable ruling by the trial court. Clearly, as Continental stood to gain a substantial advantage based on the court's ruling, it abandoned its original position in seeking relief, which was for the court to declare the offer void and unenforceable, and quickly accepted the judicially modified offer.
P & O, meanwhile, also did not seek a ruling or attempt to enforce its "Notice of Revocation," because, it too, hoped to obtain an advantage. By appealing the trial court's judicial modification of its offer, it hoped to obtain a reinstatement of its original offer, without the modification. If unsuccessful, as a fall-back position, P & O could then argue that the offer was revoked. In fact, the notice of revocation issue was only mentioned in a footnote in P & O's lengthy brief and was only addressed during oral argument due to a question posed by this court. Even then, P & O argued that its position was that P & O's offer was a valid offer, not that the trial court lacked jurisdiction to alter its offer to Continental because the offer was revoked and no longer pending.
Prudence alone suggests that an appellate court should not resolve a complex case, such as this one, on an issue that was not addressed by the litigants and not ruled upon below. Judicial restraint requires it. As P & O did not attempt to obtain a ruling by the trial court on the legal effect of its "Notice of Revocation," did not seek to halt the proceedings below on jurisdictional or mootness grounds, and did not argue on appeal that its "Notice of Revocation" was controlling, we conclude that appellate review is precluded on this issue, and have ruled on the issues properly preserved, briefed, and argued before this court. We, therefore, conclude that P & O's offer, eliminating the non-compete clause was void, as it was an invalid offer, that it was error to judicially modify material terms of the offer in order to turn an otherwise invalid offer into a valid one, and it was error for Continental to accept the judicially modified offer.
Reversed and remanded.
CORTIAS and ROTHENBERG, JJ., concur.
GREEN, J. (specially concurring).
With all due respect, the final declaratory judgment and permanent injunction entered in favor of Continental and against P & O must be reversed, and this cause *512 dismissed as moot, because P & O effectively revoked its offer prior to Continental's acceptance. Once P & O revoked its offer the subject of Continental's action ceased to exist and there was no offer for the lower court to construe.

I.
In 1998, Continental's parent company and P & O's predecessor-in-interest formed a limited liability company under Delaware Law to operate a stevedore business at the Port of Miami. Their understanding was memorialized in a written agreement to be construed under Delaware law. This agreement permits either party to force the purchase or sale of the other party's fifty percent interest in the company under the buy-sell (or put-take) provisions in Paragraph 13.2:
Should either Member desire to purchase the other Member's Membership Interest in the Company, then the Member (the "Offering Member") desiring to effect such purchase shall make a written offer for such acquisition, which offer shall be at such price and upon such terms and conditions as the Offering Member deems appropriate. After the offer is made, the Member receiving the offer (the "Offeree Member") may either accept the offer or purchase the Offering Shareholder's fifty percent (50%) Membership Interest upon the same terms and conditions as the Offering Member's offer. The Offeree Member shall have thirty (30) days from the date that such offer is communicated within which to either accept the offer or elect to purchase the Offering Member's fifty percent (50%) Membership Interest on the same terms and conditions as the offer. The Offeree Member's acceptance of the offer or election to purchase shall be in writing.
Thus, once an offer was made pursuant to this paragraph, the offeree could only buy on the exact terms and conditions of the offer, or sell to the offeror on those exact terms.
This agreement also contained a noncompete provision. That provision states, in pertinent part, that:
Each member agrees ... it will not directly or indirectly engage in or conduct, at the Port of Miami, or any location in Dade County, Florida, any of the Business activities conducted by the Company ... such agreement to survive any transfer of disposition by any Member of its Membership Interest but to terminate upon the first to occur of: (a) three (3) years after the purchase of such Membership Interest pursuant to the provision of Sections 13....
Shortly after the execution of this agreement, P & O sent Continental a written offer to purchase Continental's interest in the company for $7,200,000.00 with the condition that the parties waive the noncompete provision. This $7,200,000.00 was less than the true value of Continental's interest.[2] Pursuant to the buy-sell provision, Continental could either accept this offer or, failing that, make the same offer to P & O within thirty days.
Continental took neither course of action. Instead, it initiated the lawsuit below seeking declaratory and injunctive relief. Essentially, Continental asked the court to determine that: P & O's offer was legally unenforceable and void ab initio; Continental was under no duty to respond to the offer; and that P & O was precluded from competing with the limited liability *513 company pursuant to the non-compete provision. Continental also alleged that the offer was made in bad faith and that P & O had breached their agreement.
Continental filed a Verified Emergency Motion for Preliminary Injunctive Relief seeking to preclude P & O from enforcing its proposed offer under the buy-sell provision.[3] The court entered a temporary injunction that extended Continental's response time to the offer.[4] In that same order, the trial court appointed a Special Master to make findings of fact and conclusions of law as to whether either party was entitled to declaratory relief and whether Continental was entitled to permanent injunctive relief on the claims and defenses raised in the pleadings.
The Special Master found that the agreement between the parties was ambiguous and that extrinsic evidence was necessary to ascertain whether the term "condition," in the buy-sell paragraph, included P & O's proposed waiver of the non-compete provision. The Special Master held an evidentiary hearing. On the day before the Special Master's report was to issue, P & O revoked its offer, which is the subject matter of this litigation, and provided Continental with written notice of same.[5] Notwithstanding P & O's notice of its revocation of the offer, the Special Master issued his report with his findings.[6]
Before the trial court accepted the Special Master's report, and before it issued the final declaratory judgment, Continental filed a motion to deem invalid P & O's notice of revocation. Continental argued that the buy-sell provision required that the offer remain open for a period of thirty days; the court's temporary injunction required that the offer remain open for ninety days; and the buy-sell offer constituted an irrevocable option that could not be revoked during the time period specified therein. P & O responded and pointed out, among other things, that Continental was now taking an inconsistent position because throughout the litigation it had maintained that the offer was void ab initio and legally unenforceable. P & O asserted that the temporary injunction only tolled the time for Continental's response to the offer Äî it did not address P & O's revocation rights, and that the offer was not an irrevocable option as a matter of *514 law as it was not supported by independent consideration.
The record reflects that the trial court, inexplicably, never recognized the mootness of this litigation by virtue of P & O's timely revocation of its offer. Instead, the trial court proceeded to adopt the Special Master's findings and entered final judgment pursuant thereto. This appeal followed.

II.
Fundamental, well-established contract law principles state that an offer can be revoked any time by the offeror prior to acceptance by the offeree. See Montray Realty Co. v. Arthurs, 105 A. 183 (Del. 1918); Snitch v. Freeman, No. 7130, 1984 WL 19837 (Del.Ch. Feb. 15, 1984); Danby v. Osteopathic Hosp. Ass'n of Del., 101 A.2d 308 (Del.Ch.1953). The only requirement for the revocation of an offer to be effective is that it be communicated to the offeree. See Mitchell v. Brimer, No. A. 1117, 1987 WL 5319 (Del.Ch. Jan. 12, 1987); Pierce-Phelps, Inc. v. Lee, No. 32, 1986 WL 1275 (Del.Super.Ct. Jan. 17, 1986). The offeror does not need to do anything else. Truax v. Philadelphia, Wilmington & Baltimore R.R. Co., 8 Del. 233 (Del.Super.Ct.1866); Restatement (Second) of Contracts ß 42 (1981); Arthur L. Corbin, Corbin on Contracts ß 2.19 (Rev. ed.1993); Samuel Williston, Williston on Contracts ß 5:8 (4th ed.1990).
Here, P & O effectively revoked its offer and mooted this litigation when it communicated the revocation to Continental in writing prior to the proscribed time for Continental's response. Contrary to Continental's representation, P & O's notice of revocation did not violate or otherwise run afoul of the court's temporary injunction order. Continental procured this temporary injunction from the court based upon its argument that P & O's offer was void ab initio and legally unenforceable. Continental neither sought nor wanted P & O's offer to be extended throughout the course of this litigation. Continental merely requested and was granted an injunction tolling its response time to the offer. The court's injunction did not require P & O to keep its offer open for any specified time.[7]
Moreover, Continental's additional argument in the pleadings below, that the offer was an irrevocable option is simply wrong as a matter of law where there was no consideration for the same. See Kahn v. Gen. Dev. Corp., 174 A.2d 307, 312 (Del. 1961).
An option is a continuing offer or contract by which the owner stipulates with another that the latter shall have the right to buy the property at a fixed price within a certain time, and unless the option is founded on a consideration, or is under seal, it may be withdrawn at any time before acceptance. Such an offer imposed no obligation upon the offerer unless within the time expressly or impliedly limited it is accepted.
Gibbs v. Piper, 153 A. 674, 676-77 (Del. 1930). In the absence of consideration, P & O's offer was simply a continuing offer that could be revoked at any time prior to acceptance. See Gibbs.

III.
Thus, given the fact that the court's temporary injunction did not otherwise preclude P & O from withdrawing its offer at any time prior to the prescribed time set for Continental's response, P & O's *515 unilateral revocation of the offer mooted and terminated the litigation below. If I understand the majority opinion correctly, my colleagues appear to opine that the failure of either party to somehow obtain a ruling from the trial court on the effectiveness of P & O's notice of revocation somehow precludes us from considering the mootness of this litigation on appeal. With all due respect, they are simply wrong. As earlier explained, as a matter of law, P & O had the unilateral right to revoke its offer prior to Continental's acceptance. See Montray Realty Co.; Snitch; Danby; Truax. P & O did not need the permission or legal imprimatur of the trial court for the revocation of its offer to become effective. P & O's revocation was essentially self-executing. See Montray Realty Co.; Snitch; Danby; Truax. Continental's motion to deem the revocation invalid therefore was a legal nullity. Upon P & O's revocation of its offer, the only appropriate course of action for the trial court to take was the dismissal of this action.
Indeed, upon P & O's notice of revocation, either party could, (and should) have simply filed a suggestion of mootness with the trial court so that this case could have been dismissed.[8] Contrary to what the majority states, however, their failure to file a suggestion of mootness and the trial court's failure to recognize the mootness of the issue before it does not preclude an appellate court from doing so. See Sarasota-Fruitville Drainage Dist. v. Certain Lands Within Said District Upon Which Drainage Taxes for the Year 1952 Have Not Been Paid, 80 So.2d 335, 336 (Fla. 1955)("It is a fundamental principle of appellate procedure that only actual controversies are reviewed by direct appeal"); Bd. of Pub. Instruction v. Budget Comm'n of Orange County, 249 So.2d 6 (Fla.1971)(appeal that was rendered moot must be dismissed). See also DeHoff v. Imeson, 153 Fla. 553, 554, 15 So.2d 258, 259 (1943)(court should not determine controversy where issues have become moot). In their apparent zeal to address the merits of this litigation, my colleagues have simply ignored long standing principle that courts must refrain from addressing issues that are not ripe or properly before the them. See DeHoff, 153 Fla. at 555, 15 So.2d at 259 ("An appeal should be dismissed where no practical result could be attained by reviewing the questions therein contained."). In failing to recognize the mootness of this action, they are essentially perpetuating the error of the trial court.
Thus, without rendering an advisory opinion on the propriety of the court's action below, I believe that the final declaratory judgment and injunction must be reversed and vacated with directions for the trial court to dismiss this action as moot.
NOTES
[1] The buy-sell provision in the instant case was modeled after the buy-sell provision in the Continental-Harrington agreement and is virtually identical to it. Mr. Novacek testified that, when the Agreement was being negotiated, he sent I.T.O., P & O's predecessor, a copy of Continental's agreement with Harrington as a "starting place" for the agreement between Continental and I.T.O.
[2] Ironically, Continental utilized this same buy-sell provision to oust P & O's predecessor from the company, thus giving credence to the adage that "what goes around, comes around."
[3] Specifically, in its prayer for relief Continental requested that the court enter an order

temporarily enjoining the Defendant, P & O Ports Florida, Inc., f/k/a I.T.O. Corporation of Florida and its parent, affiliates, sister corporations and subsidiaries from rendering the Buy-Sell option effective, preventing the defendants from taking any action under the Buy-Sell provisions of the Agreement, directly or indirectly, which might affect that status quo, prohibiting the defendant's attempted exercise of the option under the Buy-Sell provisions of Article 13, prohibit the enforceability of the Buy-Sell offer as tendered, to prevent the defendant from engaging in any activities in violation of the Agreement and to award such further relief as the Court may deem appropriate.
[4] The trial court's May 9, 2003, order states:

The time for response to the offer made by Defendant, P & O, filed as Plaintiff's Substitute exhibit B to the Complaint, shall be tolled nunc pro tunc for ninety (90) days commencing May 2, 2003, or such later date as the parties may mutually agree, such that upon conclusion of the tolling period, the Plaintiff shall have six (6) days in which to respond to the Defendant's offer, if necessary.
(Emphasis added)
[5] Curiously, and without explanation, my colleagues in the majority characterize this as an "attempted" revocation. See op. at 509. It seems to me that the revocation of an offer is either effective or it isn't. There can be no "attempted" revocation.
[6] It is unclear from the record whether the special master was apprised of P & O's revocation.
[7] Indeed, until Continental received a favorable ruling from the Special Master, Continental never wanted P & O's offer to be deemed effective, let alone extended throughout the course of this litigation. Therefore, its subsequent argument, that the revocation somehow violated the court's temporary injunction is, at best, disingenuous.
[8] An issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect. See Godwin v. State, 593 So.2d 211, 212 (Fla.1992).